## PARKER'S HEIRS vs. PARKER'S ADM'R.

[FINAL SETTLEMENT OF ADMINISTRATOR'S ACCOUNTS.]

1. *Amendment of account-current.*—The allowance of an amendment of the account-current filed by an administrator is not a matter which will work a reversal of the decree on error, when the record does not show that the distributees were thereby surprised, or that they desired a continuance.

2. *Proof of value of services.*—When an administrator claims to retain for the value of certain services rendered to his intestate during several years before the death of the latter, in superintending the farm, making contracts for him, attending to his negroes, &c., he may prove the yearly value of such services by the opinion of witnesses.

3. *Allowance of interest to administrator.*—Where an administrator establishes a claim to the allowance of compensation for services rendered to the intestate in his life-time, extending through a series of years, the court may also allow interest on each year's wages.

4. *Implied contract between father and son.*—Whatever may be the claims of filial duty and affection, as between an aged and infirm father and his grown son, there is no principle of law, which requires the son, while living separate and apart from his father, to perform services for the latter without compensation, when the father is in comfortable circumstances; consequently, to support the son's claim to compensation for such services, proof of an express contract is not necessary.

APPEAL from the Probate Court of Tuskaloosa.

IN the matter of the estate of Owen Parker, deceased, on final settlement of the accounts of Rhese C. Parker, the administrator. The assignments of error embrace all the rulings of the court to which exceptions were reserved by the distributees, some of which require no special notice. The material facts are as follows:

"When the case was taken up, the debit side of the account was blank as to amounts. It contained two items—'To amount of sale of personal property,' and 'To amount of sale of land'—but these amounts were left blank. The last item on the credit side of the account was in these words: 'By services rendered Owen Parker, in superintending his farm, making contracts, attending to negroes, buying provisions, horses, &c., from January, 1840, to October, 1855, at $100 per year—$1640.' The

amount ($1640) appeared to have been altered from some other sum. One of the administrator's attorneys stated, that after the account had been made out and filed by his co-partner, the administrator came to him, and said, that he had forgotten to put in a charge for two horses; that he (witness) then made a memorandum on a slip of paper in these words: '1846. Dr. To one black mare, $65; 1847. Dr. To one bay horse, $75—$140;' that he carried the slip of paper to the court-house, a few days after the account was filed, and made the alteration of the amount of that item in the account, and put the slip of paper in the account, intending it to show, as a part of the account, why the alteration was made. The slip of paper was found in the account. On the morning of the second day of the settlement, after all the administrator's witnesses had been examined, he asked leave of the court to amend his account, by adding the charge for the two horses mentioned in the memorandum. The contesting distributees objected, but the court allowed the amendment to be made, by attaching the slip of paper to the account with a wafer; to which the contesting distributees excepted."

The intestate died some time in the year 1855. The administrator, who was his son, claimed an allowance of $100 *per annum* for services rendered in superintending his business, from the year 1840 up to the time of his death. The evidence adduced in relation to this matter, which is all set out in the bill of exceptions, proved the rendition of services by the administrator for his father, during the period mentioned; but there was no proof of any contract between the parties, and the witnesses differed widely in their estimate of the value of the services. The contesting distributees objected to the testimony of several of the administrator's witnesses, " so far as they severally give an opinion or estimate of the value of the alleged services of the administrator by the year," and reserved an exception to the overruling of their objection. On all the evidence adduced in relation to this item, "the court decided, that said administrator was entitled to retain for eleven years services rendered by him for the decedent in his life-time; the first seven years at $25 per

year, the next two years at $75 per year, and the last two years of the old man's life at $100; and that interest should be computed on these several amounts from the end of each year respectively;" to each of which rulings of the court the contesting distributees excepted.

W. MOODY, for the appellants.

W. R. SMITH, *contra.*

STONE, J.—It is not necessary, in this case, that we should consider whether there are any cases in which we would reverse, on account of an amendment of the account-current, allowed on the trial in the probate court. Evidently, the allowance of amendments should not be permitted to prejudice the distributees; but, when the amendment operates a surprise to them, and new matter is brought up, of which they had not had notice, and which they can probably repel or explain, equal and exact justice would require, that the trial should be adjourned, if desired by them.

In the present case, it does not appear that any new matter was brought forward, of which the parties had not been notified. On the contrary, it is shown that the amendment was lodged in the office of the probate court, and, in fact, was placed in the account-current, within a few days after the account itself was filed. The case was twice continued; and we suppose, if the contesting distributees had shown to the court that they were ignorant of the claim set up in the amendment, until after they had entered upon the trial, and had further shown that they could, on another trial, produce material testimony, adverse to the allowance of such claim, the probate court would have granted them a continuance. The present record fails to show that the distributees were surprised, or that they desired a continuance.

In what we have said above, we do not wish to be understood as asserting that we would, under any circumstances, review a decision of the probate court, allowing amendments, or granting or refusing to grant a continuance.

[2.] We can perceive no valid objection to the form of the question and answer, which sought to prove the value of Rhese C. Parker's services. Those services ran through a series of years; and notwithstanding they did not employ all his time, still they were continuous in their character. We think it was permissible to prove their yearly value. A similar question was objected to in Reese v. Gresham, 29 Ala. 91. This court held the question free from error.

[3.] Nor do we think the court erred in the allowance of interest on the wages for each year.—See Stoudenmeier v. Williamson, 29 Ala. 558.

[4.] Rhese C. Parker and his father were living separate and apart from each other. The son, we have a right to suppose, had attained to majority, and hence was not under the control of his father. The father was amply solvent, and had the means of comfortable support. Whatever demands filial duty and affection might have made upon the son, we know no rule of law which requires him to perform work and labor at the request of his father, without compensation. We have carefully examined the testimony; and although the witnesses differ very materially in their estimate of the value of the services, the allowance made by the probate court is probably a very just medium between the extreme figures given by the witnesses. We do not feel authorized to disturb his conclusions.

The testimony fully authorized the allowance made for the two mares.

We have not considered the question of the exclusion of evidence. Enough of testimony that is free from objection is found in this record, to sustain the judgment of the court.

Judgment of the probate court affirmed.