No. 11,810.

Gavin *v.* Kniffen.

Decided October 31, 1927.  Rehearing denied November 21, 1927.

Action for allowance of claims against the estate of a deceased person. Claims allowed in part and disallowed in part.

*Affirmed in Part.*

*Reversed in Part.*

1. Appeal and Error—*Findings—Conflicting Evidence.* Findings of the trial court based on conflicting evidence will not be disturbed on review.

2. Bills and Notes—*Alteration—Proof.* In an action on claims against an estate, the contention of claimant that the burden of explaining the alteration of the date of a note upon which the claim was based, was not upon him since the administrator had not objected on that ground, overruled.

3. Executors and Administrators—*Claims—Interest.* Interest held properly allowed on advances made to an estate with the knowledge and acquiescence of the administrator.

4.     *Claims—Interest.* Interest should be allowed on a note of decedent where it bears interest by its own terms.

5.     *Claims—Interest.* Where a loan was made to decedent with the promise of a note in the future, an agreement to pay interest is implied, and claim for interest should be allowed.

6.     *Claims—Contest—Interest.* There is no legal rule that interest may not be allowed on a claim during the time it is being contested by legal proceedings.

7.     APPEAL AND ERROR—*Sufficiency of Evidence.* The appellate court will not usurp the functions of the trial court to determine the sufficiency of the evidence.

8.     WITNESSES—*Expert—Examination.* In examining an expert witness, counsel may ask any question in chief which would be proper on cross examination, unless it be leading.

9.     EVIDENCE—*Leading Questions.* A question to an expert witness asking his reasons for stating that a disputed signature was genuine, held not leading.

10.     WITNESSES—*Examination.* Any witness may state the grounds of his knowledge.

11.     *Expert—Examination.* Experts may state the reasons for their opinions on direct examination.

12.     BILLS AND NOTES—*Consideration—Evidence.* In a proceeding for allowance of claims against an estate, checks of claimant and slips showing deposits made by decedent corresponding in date with the notes upon which the claims were based, held admissible to prove consideration for the notes, and their rejection error.

13.     *Consideration.* A consideration tends to prove the genuineness of the contract which it sustains.

*Error to the District Court of Pueblo County, Hon. James A. Park, Judge.*

Mr. M. G. SAUNDERS, Mr. E. F. CHAMBERS, for plaintiff in error.

Mr. JOHN H. VOORHEES, for defendant in error.

*Department One.*

MR. JUSTICE DENISON delivered the opinion of the court.

LILLIAN Kniffen presented a claim against the estate of one Foley for about $16,000. The county court disallowed the whole claim. On appeal the district court allowed certain items and disallowed others. The administrator brings error and the claimant assigns cross-error.

The items of the claim were as follows:

(1) A note dated August 14, 1917, payable one year after date, $2,500.

(2) A note dated April 26, 1919, payable three months after date for $1,000.

(3) A claim on a lost note dated August 18, 1920, $1,417.67.

(4) A note dated April 22, 1921, six months, $1,200.

(5) A note dated October 19,1921, thirty days, $1,200.

(6) A note dated December 8, 1921, $3,200, six months.

(7) Loan of $2,000, December 28, 1921. No note.

(8) Loan of $1,512.86 to estate, with consent of administrator.

(9) Loan of $185.49, same.

(10) Loan of $544.43, same.

No. 10 was withdrawn; the district court allowed items 5, 7, 8 and 9, with interest, and disallowed the remainder.

The first point against the claimant is that on January 10, 1922, eight days after Foley's death and while she, who had up to his death, been his bookkeeper, confidential clerk and mistress, was in possession of his books and papers, she made away with most of the books of account of his lumber business, pretended to be his widow (see *Foley v. Gavin,* 76 Colo. 286, 230 Pac. 618), and gave to the administrator a statement of her claims against the deceased which disagreed with the claim she

afterwards filed, as shown by the following comparative table:

| As given to Administrator, | | As filed for Allowance, Aug. 14, 1917, note $2,500.00 |
|---|---|---|
| Aug. 14, 1917.. | $ 2,500.00 | Apr. 26, 1919, note   1,000.00 |
| Sept. 30, 1918.. | 900.00 | Aug. 18, 1920, |
| Apr. 22, 1919. | 1,000.00 | lost note........   1,417.67 |
| Aug. 18, 1920. | 917.67 | Apr. 22, 1921, note   1,200.00 |
| Apr. 26, 1921. | 1,200.00 | Oct. 19, 1921, note   1,200.00 |
| Oct. 19, 1921.. | 1,200.00 | Dec. 8, 1921, note   3,200.00 |
| Dec. 28, 1921.. | 3,200.00 | Dec. 28, 1921, no note 2,000.00 |
| | $10,917.67 | $12,517.67 |

Of these last mentioned items the court allowed the note of October 19, 1921, $1,200, which appears in both bills, and the loan of December 28, 1921, $2,000, which did not appear in the statement of January 10, 1922.

We will consider each item separately, first the items allowed:

1. Item 5. This was a note dated October 19, 1921, due in 30 days. All the witnesses on handwriting say the signature is that of the deceased, and its maturity is so recent that it could not be called a stale claim. Foley's ill health for some weeks before his death would account for the fact that it was not paid. The only thing against it is the general discredit cast upon the whole claim by the conduct of the claimant with reference to the estate, to which we shall refer below. We cannot reverse the finding on this item.

2. Item 7. The claimant alleges a loan to Foley December 28, 1921, five days before his death, of $2,000. It is proved by the testimony of one Forbes, claimant's brother-in-law. If the court believed his testimony it must have allowed the item. Though it is seriously discredited by the matters above mentioned and by the fact that claimant left it out of her original statement given to the administrator only two weeks after it is said to have been made, we cannot say its allowance was an error.

3. Item 8. The claimant testifies that January 13, 1922, shortly after Foley's death, she paid freight charges on lumber in the freight yards, consigned to him, upon which demurrage was mounting at the rate of $15 per day, and that she did so at the administrator's request, and that the lumber thereupon went to Foley's yard. The administrator had leave to continue the business of the deceased and the presumption from the evidence is that he disposed of this lumber in the course of that business. The suggestion, therefore, that this payment burdened instead of benefitting the estate, is not of much force. The administrator denies that he requested or consented to or knew of this payment and claims that claimant was an interloper and paid as a volunteer and is therefore without redress, but he does not say when he first discovered it or that he ever repudiated it till after it was filed as a claim against the estate which was July 1, 1922, nearly six months after his appointment. The court expressly finds that the administrator knew of and acquiesced in this payment, the evidence is in dispute and we cannot reverse its finding.

4. Item 9. This is to be considered as a part of item 8, since it is so treated at the trial.

Taking up now the disallowed claims (it is said that the evidence required their allowance):

5. Item 1. This note was three years and five months overdue at Foley's death, with no explanation of the delay and is thereby seriously discredited. In addition it was shown to be written on a blank form not in existence till many months after its date. Attempts, in rebuttal, to explain this, were inconsistent with the evidence in chief. Mr. King, handwriting expert, gave his opinion that this note bore Foley's genuine signature; on the other hand, two bank officers, who had in the course of their business paid and passed on many hundreds of Foley's checks, said positively, that it was not, and there was other evidence to that effect. The evidence as a whole justified the court's action on this item.

6. Item 2. This note was stale, two and one-half years overdue when Foley died. Mr. King and the other experts testified as they did with reference to item 1. The court expressly found that the evidence was insufficient to prove the signature. We cannot disturb this finding.

7. Item 3. This is a claim for $1,417.67 on a note said to have been lost. The court found the evidence insufficient to establish the claim. We do not find any substantial evidence in favor of it.

8. Item 4. A note dated April 22, 1921, due in six months. The evidence on this is the same as on item 2, and the court made the same finding. We cannot disturb it.

9. Item 6. A note for $3,200 dated December 8, 1921. There is evidence that the date of this note had been changed from December 28 to December 8. This evidence is supported by the claimant's first statement to the administrator, wherein this item appears as of December 28. The court found the evidence insufficient to explain this alteration and we think it was right. It is urged that, since the administrator did not object to the item on this ground, the burden of explanation was not upon the claimant, and *Byers v. Tritch,* 12 Colo. App. 377, 55 Pac. 622, is cited. We find nothing in that case, however, to maintain claimant's proposition. The decision there was that the alteration was explained, and if defendant had any evidence against the explanation he might have introduced it, but did not. For the law of this state on alteration of notes, see C. L. §§ 3941, 3942; *Ayres v. Walker,* 54 Colo. 571, 574, 575, 131 Pac. 384.

10. Item No. 10 was withdrawn by the claimant during the trial.

11. It is insisted that the allowance of interest on the allowed items was erroneous; interest, however, on the sums advanced after the death was proper, because the court has found that these advancements were made with the knowledge and acquiescence of the administrator. As to the note of October 19, 1921, $1,200, and the loan

of December 28, 1921, $2,000, the matter is not so clear, but we think that since this note bears interest by its own terms, interest must be allowed on it, and, since the $2,000 loan was made with the promise of a note in future, the agreement to pay interest was implied. This seems to accord with authority. 24 C. J. 443, 444; *Estate of Reber*, 143 Pa. 308, 22 Atl. 880; *Anderson's Administrator v. Birdsall's Admx.*, 19 La. 441; *Parker's Heirs v. Parker's Adm'r*, 33 Ala. 459; *Newel v. Keith*, 11 Vt. 214.

The administrator urges that since so much of the whole claim was spurious and fraudulent the administrator was justified in contesting it all and that therefore the interest during the contest is unjust. That argument necessitates the premise that interest during contest may not be allowed on a claim the contest of which was justified. We know of no such rule.

12. The administrator argues that so much doubt is thrown on the whole claim by the spurious and fraudulent nature of parts of it and by the conduct of claimant with reference to it (see *Foley v. Gavin*, 76 Colo. 286, 230 Pac. 618), that the evidence in favor of the rest must be considered insufficient and the whole disallowed. That is a strong argument to make to the trial court, but were we to regard it in this case we should usurp that court's functions, and so had the decision been the opposite we probably could not reverse it.

13. With reference to the disallowed items Nos. 1, 2 and 4, Mr. King, the expert, gave his opinion that the signatures were genuine; he was then asked, "Now you have stated that these are his signatures, will you please give us reasons why you so state. Objected to as cross-examination." The objection was sustained and claimant excepted. This was an error. We know of no rule that counsel may not ask any question in chief that would be proper on cross-examination unless it be leading, which this question is not.

Any witness may state the grounds of his knowledge. 1 Wig. Ev., sec. 562. It is an everyday matter in trial courts for experts to state the reason for their opinions

on direct examination. Counsel for claimant has cited no authorities, but they are numerous. The following are some of them: 22 C. J. 722; Rogers on Expert Test. (2d Ed.), sec. 37; 5 Enc. Ev. 613; *People v. Shattuck,* 109 Cal. 673, 679, 42 Pac. 315; *Steam Mill Co. v. Water Power Co.,* 78 Me. 274, 4 Atl. 555; *Keith v. Lothrop,* 10 Cush. (Mass.) 453, and the well-known case of *Commonwealth v. Webster,* 5 Cush. (Mass.) 295, 52 Am. Dec. 711.

14. The court rejected certain checks corresponding in date with the notes, items 1, 2, 4 and 5, which checks were signed by claimant and showed by the assistant cashier's testimony to have gone to the account of deceased in the Minnequa Bank, and to have been charged to claimant's account in the same bank, and deposit slips, identified by said cashier, of like dates, showing, among other items, deposits to his account of like amounts on those dates. The briefs have given us no aid on this point, but we can think of no reason why these papers should not have been received. True they are not conclusive, but they tend to prove consideration for the notes which is proper to be proved even though the note presumes it (8 C. J. 993); indeed the administrator might defend against these notes by proving, if he were able, that there was no consideration for them (8 C. J. 994); and a consideration tends to prove the genuineness of the contract which it sustains. This seems to have been its original purpose and the basic reason for the law which requires it. 13 C. J. 313; *Eastwood v. Kenyon,* 11 A. & E. 438, 450; *Pillans v. Van Mierop,* 3 Burr 1664, where Lord Mansfield goes so far as to say that originally consideration was for the sake of evidence only. The deposit of the checks amounts in substance to a statement by the depositor that he received the amount, and the deposit slips, which are handed the bank with the checks, are an incident of the checks. The checks and slips should have been received, and we cannot say that their rejection was not prejudicial. Whether the slips were competent without the checks we do not say.

The result is that the judgment as to the three notes dated respectively August 14, 1917, for $2,500, April 26, 1919, for $1,000, and April 22, 1921, for $1,200, must be reversed and a new trial granted as to these notes alone. The judgment on the remainder of the several items of the court's findings is affirmed.

MR. JUSTICE BUTLER, sitting for MR. CHIEF JUSTICE BURKE, MR. JUSTICE WHITFORD and MR. JUSTICE SHEAFOR concur.