114 So.2d 904

Harry I. BLAYLOCK et al.

v.

Bernice Blaylock PILLSBURY.

6 Div. 379.

Supreme Court of Alabama.

Oct. 8, 1959.

Johnson & Randall, Oneonta, for appellee.

Nash & NeSmith, Oneonta, and James & Beavers, Birmingham, for appellants.

SIMPSON, Justice.

This appeal is from the Circuit Court in Equity of Blount County, allowing in part the claim of appellee Bernice Blaylock

**604**

Pillsbury, filed against the estate of her deceased father, Isham Blaylock, in the course of the administration of his estate which was removed from the Probate to the Circuit Court on application of appellee.

The claim of appellee was for services rendered her mother and father during the latter years of their lives. The evidence goes to show that in 1938 appellee and her husband and infant son, who lived in Baltimore, Maryland where her husband was on the police force of that city, were on a visit in Birmingham with her mother and father, Mr. and Mrs. Isham Blaylock. While on that visit her mother suffered a stroke of paralysis, from which she partially recovered in a few weeks, but it left her speechless. Isham Blaylock, her father, asked Mrs. Pillsbury and her family to stay on so Mrs. Pillsbury could help look after her mother and do the housework for them, to which she agreed, giving up her home in Baltimore and moving to the home of her father, first in Birmingham and afterward to Blount County, where she remained until both parents died. She did the housework, nursing and caring for her mother, preparing the meals, doing the washing, scrubbing and cleaning, and all the necessary housework except what little her mother was able to do. After residing in Birmingham for some period, the entire household moved to a farm in Blount County, owned by Isham, where they built a house in which to live. Disinterested witnesses testified to several occasions in which Isham stated that he did not wish to sell any part of his farm because he wanted it to go to his daughter Bernice; that he wanted Bernice to have the farm. According to one witness, Isham stated that "we couldn't get along without Bernice" and that Bernice did most of the housework. On another occasion, according to another disinterested witness, Isham stated that he did not care to sell any part of his farm but "I am going to keep it for Bernice a home".

The trial court allowed the claim in part, to wit: $6,950. The decree of the court seems to have rested its finding on an express contract to the following effect:

"Bernice Blaylock Pillsbury agreed to give up her home in Baltimore, Maryland, and to come to Birmingham, Alabama, and live in the home with the said Isham Blaylock and his said ill wife and to take care of them, her said mother and father, and to do, or to help do, the house work and nursing and caring for her said father and mother as long as they both lived; and that as the consideration for such services the said Isham Blaylock agreed with the complainant to give, deed or will to her, the complainant, the farm which the said Isham Blaylock then owned in Blount County, Alabama, and that he still owned said farm until the date of his death."

We are in agreement with the trial court that claimant was entitled to an allowance for her services on the above stated premise, but disagree with the court that such a finding can be rested on an express contract. We do hold, however, that on the legal and competent evidence introduced, it clearly appears that there was an implied contract on the part of Isham Blaylock that his daughter Bernice should receive compensation for her services and an understanding on her part that she was to so receive it. The various statements that Isham intended to leave the home and farm to her afford a clear inference that he intended for her to have pay for her services and her agreement to stay on under these circumstances also affords an inference that she intended to receive compensation therefor.

■ For reversal of the decree appellants rest in large part upon the well-recognized principle that for articles furnished or services rendered by a child to a parent, the presumption is that the services were gratuitous, and that such claims are viewed with suspicion and disfavor. Box v. Box, 247 Ala. 291, 24 So.2d 28; Harrison v. Harrison, 261 Ala. 648,

75 So.2d 620; Burnett v. Garrison, 261 Ala. 622, 75 So.2d 144; Patterson v. Carter, 147 Ala. 522, 41 So. 133.

But the law is also well settled that this presumption may be rebutted by proof of an express contract or a contract implied in fact, that is, established by facts and circumstances disclosing that at the time the services were rendered, both parties contemplated or intended compensation therefor. Patterson v. Rehfuss, 250 Ala. 508, 35 So.2d 330, and cases cited therein. Or as stated in Coleman v. Adkins, 232 Ala. 351, 353–354, 168 So. 184, 186:

"It is now well-settled in this state that an implied agreement may be inferred and support an action * * * as between near relatives, where the facts and circumstances are such that a mutual intent to pay and to receive pay for such services is a reasonable and just conclusion. Lowery v. Pritchett, 204 Ala. 328, 85 So. 531; Nelson v. Nelson, 210 Ala. 592, 98 So. 885; Croft v. Croft, 219 Ala. 94, 121 So. 82; Butler v. Kent, 152 Ala. 594, 44 So. 863; Kinnebrew's Distributees v. Kinnebrew's Administrators, 35 Ala. 628; Parker's Heirs v. Parker's Adm'r, 33 Ala. 459."

And with respect to an implied contract in such cases, Patterson v. Rehfuss, supra [250 Ala. 508, 35 So.2d 332], has this to say:

" * * * where an adult child removes from the home of the parent and marries and afterwards renders personal services to the parent which are voluntarily accepted, a promise on the part of the parent to pay therefor may be implied."

In the light of these authorities we entertain the view that the evidence supports the conclusion that there was an implied contract between father and daughter that the daughter should be compensated for her services.

The claim covered a period of some ten years preceding the death of Isham Blaylock, his wife having predeceased him by several years. Appellants argue the statute of limitations of three years as a bar to a part of the claim. The argument is untenable. In addition to there being nothing in the answer invoking the operation of the statute, the claim did not accrue until the death of Isham, and after his death it was seasonably filed. Manning v. Pippen, 86 Ala. 357, 5 So. 572; Pinson v. Gilbert, 57 Ala. 35; Richards v. Williams, 231 Ala. 450, 165 So. 820, 37 C.J. 820, § 172; 54 C.J.S. Limitations of Actions § 132a, p. 47.

The trial court awarded appellee $50 per month for services rendered during her mother's lifetime, and $25 per month after her mother's death until Isham's death. In view of the circumstances shown by the record, we are constrained to hold that the award was too much. Part of the claim embraced a period during the depression years when money was of some value. Also, appellee, her son, and her husband had the free use of Isham's home, Isham furnishing most of the money for the food, etc. This amounted to considerable, considering the Pillsbury's seemingly impoverished plight, Pillsbury having lost his job in Baltimore and having become ill and unable to earn a sufficient livelihood for his family. There are other circumstances not necessary to mention. Suffice it to say, after a careful consideration, we think an award of $30 per month until the death of appellee's mother and $20 per month from that time until her father's death is reasonable compensation for her services. The decree will, therefore, be modified to this extent. In all other respects the decree stands affirmed.

The cause will be remanded to the lower court for execution of the decree and for

further transaction of the administration of the estate.

Modified and affirmed, and the cause remanded to the lower court for execution of decree and further proceedings.

LAWSON, STAKELY, and MERRILL, JJ., concur.