117 So.2d 375

**Hattie McELHANEY et al.**

**v.**

**Haddie SINGLETON et al.**

**7 Div. 306.**

Supreme Court of Alabama.

Jan. 14, 1960.

Scott, Dawson & Scott, Fort Payne, for appellants.

W. M. Beck, Fort Payne, for appellees.

COLEMAN, Justice.

Hugh Wesley Coley died intestate November 8, 1952, leaving a widow, four daughters, and a minor grandson as his next of kin. The widow died prior to the filing of a bill of complaint in the circuit court, in equity, by appellants in this suit on June 14, 1954.

The complainants in the bill are two of the daughters, Mrs. McElhaney and Mrs. Bradley, and the minor grandson who sues by Mrs. McElhaney as his next friend. The respondents are the other two daughters, Mrs. Leslie and Mrs. Haddie Singleton, sometimes referred to in the testimony as Hade.

Mrs. Singleton is administratrix of the estate of her father and is a party respondent in that capacity also. She asserts a claim against the estate for services rendered and expenditures made by her for her father during his lifetime. The assertion of that claim gave rise to this suit.

Hugh Coley's estate consisted chiefly of his house and one acre lot in the city of Fort Payne. He left little personal property.

The bill of complaint prays for a sale of the real estate by the register for division among the five heirs. From a decree allowing Mrs. Singleton's claim in the amount of $1,000 and ordering a sale of the real estate by the administratrix, the complainants have taken this appeal.

The bill of complaint avers that Mrs. Singleton "procured the appointment of herself as" administratrix February 3, 1953; that she filed "with the Probate Court"

a claim or a purported claim against the estate for $4,000; that an order was entered by the probate court allowing the $4,000 claim on September 26, 1953; and that the probate court had no jurisdiction to make such order. The bill of complaint was filed June 14, 1954. It prayed for removal of the administration to the circuit court, in equity, and an order of removal was made in accordance with the prayer.

The respondents filed a plea in abatement alleging that on May 13, 1954, the administratrix had filed in the probate court of DeKalb County a petition to sell the homestead for payment of the debts of the estate, that the estate owed debts in large amounts, and that the personal property was not sufficient to pay the debts. The plea prays that the suit be "abated and dismissed out of Court," and that the administratrix be permitted to proceed with her petition already on file to sell the lands for payment of debts. After a hearing at which testimony was taken, the circuit court, in equity, on December 20, 1954, denied the plea in abatement.

On January 14, 1955, respondents filed a verified motion or petition alleging, among other things, that the administratrix had filed in the probate court on May 13, 1954, a petition to sell the lands in suit for payment of debts; that the estate was indebted; that the personalty was insufficient to pay the debts; that the probate court had set June 15, 1954, to hear the application to sell lands filed in that court; and that said proceedings were pending in the probate court when appellants filed their bill of complaint on June 14, 1954. In the petition, respondents prayed that the circuit court would make an order authorizing the administratrix to proceed in the circuit court with her petition filed in the probate court for sale for payment of debts and that the petition of complainants for sale for division be held in abeyance.

Complainants filed a motion to strike respondents' petition on the grounds that: (1) the matters set out therein refer not

to this proceeding but to another cause of action, (2) the pleading of respondents has no place in this proceeding, and (3) said petition seeks a useless order and prays for permission to proceed in another proceeding when it does not appear there is anything to prevent respondents from proceeding in the cause mentioned in said petition.

On January 22, 1955, the court entered an "Order for Procedure under Pending Bills or Petitions," which, inter alia, recited: "Upon the entering of the order of the removal of the estate to this Court, the administration of the Estate was removed here for all purposes, and this Court does not see that it is material as to which party first gets testimony before the Court. The Court will consider all of the testimony regardless of the order in which it is offered. Some testimony has already been taken, and there is no necessity of repetition of testimony that has been taken." The order denied complainants' motion to strike.

On April 20, 1955, respondents filed an answer to the bill of complaint. The answer denied the allegation that the deceased father owed no debts and asserted that he did owe Mrs. Singleton a large sum of money for which she had filed a claim which had been allowed by the probate court. The answer admitted that the lands could not be equitably divided and that sale was necessary, but denied "the allegations with reference to fraud." The answer prayed the court to permit the administratrix to proceed with the sale for payment of debts and for dismissal of the bill of complaint.

■ Testimony was taken before the register. We review the decree appealed from without presumption of correctness which attends a decree rendered on testimony heard ore tenus by the chancellor. Pope v. Pope, 268 Ala. 513, 109 So.2d 521.

The decree from which this appeal was taken declared null and void the judgment of the probate court allowing Mrs. Singleton's claim in the amount of $4,000; allowed her claim in the amount of $1,000; and authorized the administratrix to proceed with sale for payment of debts. Certain matters mentioned in the decree were reserved for decision until the coming in of the report of the sale.

### Absence of Cross-bill.

Appellants argue that the chancellor erred in allowing Mrs. Singleton's claim for $1,000 and authorizing her, as administratrix, to sell the property because, say appellants, that is affirmative relief and affirmative relief cannot be awarded to respondents without a cross-bill.

Appellants cite Hawkins v. Snellings, 252 Ala. 238, 40 So.2d 704, where it was held to be error to order foreclosure of a mortgage owned by respondent in a suit to enjoin foreclosure, where respondent did not file a cross-bill, unless complainant submits himself to jurisdiction of the court so that the court, without more, might compel him to do equity.; Johnson v. Green, 259 Ala. 511, 66 So.2d 768, where it was held that in suit for reformation of a deed, a cross-bill was not subject to demurrer in that aspect which sought to recover rent because such relief was affirmative relief to which respondents would not be entitled under their answer; O'Kelley v. Clark, 184 Ala. 391, 63 So. 948, which recognizes, as an exception to the general rule, the right of respondent in suit for accounting to have a decree against complainant without filing a cross-bill; Marshall v. Rogers, 230 Ala. 305, 160 So. 865, where respondents were held not entitled, without a cross-bill, to have allotment in kind of a moiety of the lands in suit for sale for division; and Crawford v. Chattanooga Savings Bank, 203 Ala. 133, 82 So. 163, where this court, in a suit commenced by bill to reform and foreclose a mortgage, held that the cross-bill seeking cancellation of the mortgage was not demurrable for want of equity, because the relief sought therein could be had only by means of a cross-bill.

■ The cases cited by appellants support the general rule that affirmative relief

can be had only on a cross-bill. These cases, however, do not have to do with administration of estates in equity. In the instant case, the chancellor seems to have rested the granting of relief to respondents on Ex parte Stephens, 233 Ala. 167, 170 So. 771. We think he was correct in doing so.

In the Stephens case, supra, the opinion shows that decedent died intestate February 2, 1936, possessed of land; she owed debts and the personalty was insufficient to pay same; and on July 25, 1936, one heir filed bill in equity to sell the land for division. *After the filing of the bill*, another heir applied for and received letters of administration on August 10, 1936. On August 12, 1936, the administratrix filed in the probate court her petition to sell the land for payment of debts and the probate court set a day for hearing same. On September 1, 1936, the complainant in the bill for sale for division filed his petition to remove the administration to the circuit court and the circuit judge made an order so removing the same. After removal, the administratrix filed her petition in the circuit court praying to be allowed to proceed with her petition filed in the probate court for sale for payment of debts. This last petition was denied by the judge of the circuit court and the administratrix applied to the Supreme Court for mandamus to require the circuit judge to vacate his order denying to administratrix the right to prosecute to conclusion her petition for sale for payment of debts.

This court held that the administratrix was entitled to the relief prayed for and said:

"When the circuit court, in the exercise of its unquestioned jurisdiction, reached out and brought before it for administration the estate of Martha V. Stephens, then being administered in a court of competent and concurrent jurisdiction, it took over that estate, and the proceedings had therein, just where they stood when the same were taken over. The order of removal did not serve to set aside or to annul what had been properly done theretofore in the probate court, but rather to 'pick up the proceedings' where the probate court had left off, assuming, of course, that the proceedings theretofore had in the probate court were within the jurisdiction of that court and regular.

"When the order of removal was made, and the proceedings were transferred from the probate court to the circuit court, in equity, the personal representative was removed along with the proceedings to the circuit court. Bynum v. Brewer, 217 Ala. 52, 114 So. 577.

"We are of the opinion that when the administration was removed to the circuit court, the administratrix was within her right in asking to be allowed to proceed in the circuit court with her petition filed in the probate court for the sale of the lands for the payment of the debts of the estate. It was her duty to pay the debts, if there were assets of the estate out of which they could be paid, and she and her bondsmen would be liable to any injured party for the nonperformance of this duty.

\* \* \* \* \* \*

"We are at the conclusion that the petitioner is entitled to proceed with her petition for the sale of the land for the payment of the debts of the estate; that the order of the court denying this right was improvident." 233 Ala. 167, 169, 170, 170 So. 771, 773.

■ The case at bar closely parallels the Stephens case. There the bill for sale for division was filed before the administratrix was appointed and before any proceedings had been had in the probate court. Here the bill for sale for division was filed after the administratrix was appointed and after petition for sale for payment of debts had been filed and set for hearing in the probate

court. There the bill for sale for division did not trace the title to the land into the joint owners. Here the bill of complaint does trace the title into the joint owners and further avers that the administratrix had been appointed and had filed claim against the estate.

If, on petition and without a cross-bill, the administratrix in the Stephens case had the right, after removal of administration, to proceed with her petition filed in the probate court for sale for payment of debts, the administratrix in the instant case had the same right, and we are of opinion that the chancellor did not err in allowing her so to do and in awarding the relief now complained of which was the logical result if the claim of Mrs. Singleton was a valid claim against the estate of her deceased father.

" 'Another principle equally as well understood is, that the administration and settlement of a decedent's estate, is a single and continuous proceeding, and when removed into equity for one purpose, the court must proceed to a final and complete settlement of all matters involved, including those pending and unfinished at the time of its removal from the probate court; for there can be no splitting up of an administration, any more than of any other cause of action. "It is one proceeding throughout, in a sense, and the court having paramount jurisdiction, must proceed to a final and complete settlement." ' " Little v. Gavin, 244 Ala. 156, 160, 12 So.2d 549, 552.

The fact that respondents did not file a cross-bill in the case at bar did not deprive the equity court of authority to pass upon the claim and order sale by administratrix for payment of debts. Moreover, the bill of complaint filed by appellants prayed, inter alia, " * * * that the said Mrs. Haddie Singleton be required to propound her claim in this Court, is (sic: if) any she has, *and that the same be passed upon* * * *." (Emp. and Par. Supplied.)

*Assignments of Error 2, 3, and 4.*

These assignments recite:

"The Court erred in:

"2. Holding in his decree of date of December 20, 1954 and appearing on Pages 59 and 60 of the Record that this case was and is a part of the administration of the Estate of Hugh Coley, deceased.

"3. Overruling the motion to strike the so called motion of the Respondents appearing on Pages 60 and 61 of the Record.

"4. Holding in the decree rendered on the 22nd day of January 1955 that this proceeding was a part of the administration of the Estate of Hugh Coley, deceased and that a petition of the administratrix to sell lands for the payment of debts could be intermixed or merged with this cause."

We quote in toto that portion of appellants' argument directed to assignments of error 2, 3, and 4:

"2. Proposition No. 2 refers to and is covered by Assignments 2, 3 & 4, and the decree overruling the motion of the Complainant to strike the pleading filed on January 14, 1955 and shown on the record at pages 60 and 61. This pleading is wholly irrelevent to this case. If the Complainant, Mrs. Singleton, in her case, desired to proceed, she could do so under the rule for taking testimony in Equity cases. But it certainly was not relevent to this case for the Complainant in another case and one of the Respondents in this case, to file in this case a request to proceed in the other case."

Assignment of error 2 is clearly without merit. The decree of December 20, 1954, contains the following recital:

"The one and only question submitted to this Court is whether or not 'Case No. 5592 in this court' should be

abated, and as indicated above, we are definitely of the opinion that it should not."

Assignment 2 complains of one decree and Assignments 3 and 4 complain of a different, later decree. When unrelated assignments of error are argued together and one is without merit, the others will not be considered. Ford v. Bradford, 218 Ala. 62, 117 So. 429; Bertolla v. Kaiser, 267 Ala. 435, 103 So.2d 736, and numerous cases cited in Alabama Digest, Appeal and Error, ☞736. Since assignments of error 2, 3, and 4 are argued in bulk, and 2 is without merit, 3 and 4 will not be considered.

### Allowance of Claim.

■ The appellants insist that the evidence fails to show that Mrs. Singleton had any valid claim against the estate of her father, and that the court erred in allowing the claim in any amount at all. The insistences are that the record is bare of competent evidence necessary to show, (1) that Mrs. Singleton performed services or spent money for her father sufficient to amount to $1,000 during the three years next preceding his death on November 8, 1952, and (2) that the circumstances were such as to rebut the presumption that the services and advances were given gratuitously with no expectation on the part of the daughter to receive payment and no intention on the part of the father to pay. We think the testimony of disinterested witnesses is sufficient in both particulars.

Mrs. Singleton did not live in the house with her parents during the years 1950 to 1952, but lived close by in her own home. There is conflicting testimony to the effect that she did no more than the other daughters in caring for her father, but we are persuaded that the major burden in this respect was carried by Mrs. Singleton.

The claim originally filed listed one item as for board, nursing, laundry, and working for decedent for 20 years or more prior to his death. The amended claim claimed $30 per month for caring for the mother and father during the year 1950, and $50 per month for similar services during 1952. If reasonable, these items for 1950 and 1952 alone amount to $860, allowing for only 10 months in 1952. We are of opinion that these amounts are reasonable. There is further testimony to show that Mrs. Singleton spent $350 for electric heaters in 1950. The testimony of disinterested witnesses is as follows:

Mrs. Stella Wilks testified that she had lived in the same block as Hugh Coley since 1937, that Hugh Coley was very feeble from 1950 to his death, that Mrs. Singleton nursed and cooked for her parents during those years.

Mrs. Daisy Keating testified that she lived about three blocks from the Coley home during Hugh Coley's lifetime, that he was sick the latter part of his life, that Mrs. Singleton did the work around the Coley house, and that she, Mrs. Keating, had heard Mr. Coley "say lots of times that Hade was the only child that did anything for him."

Chas. D. Igou testified that decedent told the witness that Mrs. Singleton and her husband were putting electric heaters in the house. C. E. McCartney, a witness for appellants, testified that the heaters were installed in August, 1950, and that Hugh Coley paid $350 for the heaters. Mrs. Leslie, daughter of Hugh Coley, and a respondent, testified that she did not know who paid for the heaters, but that she was familiar with her father's financial condition at that time and if he paid as testified by Mr. McCartney somebody "must have had to give him a part of it because he didn't have that kind of money."

Mrs. Mae Bowers testified that she had known Hugh Coley 30 or 40 years, had lived close to him during the latter years of his life just before he died and was in his house often, that Mrs. Singleton looked after her parents, was especially attentive to her father, and did the washing and ironing for her parents.

Mrs. Hazel Wilson testified that she lived with Mrs. Singleton from 1950 to

1952 and during that time Mrs. Singleton went to her father's house every day and "She would shave Pa and wash Pa, and she cooked and done the house."

We think the competent evidence sufficient to convince us that Mrs. Singleton, during the years 1950 to 1952, performed services and expended money for her father reasonably worth more than $1,000.

The second objection that the evidence fails to rebut the presumption that the services of Mrs. Singleton were gratuitous is met by the testimony as follows:

Mrs. Stella Wilks, mentioned above, further testified that "He (Hugh Coley) just said that Hade worked all her life and helped them and put everything she made in there and he wanted Hade to have what he had." (Par. Supplied.)

In the testimony of Mrs. W. A. Day, who had been Hugh Coley's neighbor and had had a number of conversations with him concerning Mrs. Singleton, the following appears:

"Q. Did he say anything to you about paying Mrs. Singleton for what she had done up there for him? A. Yes.

'Q. Did he tell you he wanted her to be paid?

"Mr. Scott: We object to leading.

"A. He told me he wanted Hade to have what he had.

"Q. He told you he wanted Mrs. Singleton to have what he had. A. Yes.

"Q. Did he say what she was doing for him? A. No, only she was there doing all the time."

Mrs. Minnie Kean, another neighbor of decedent, testified as follows:

"Q. Did you have a conversation just before he died with him concerning Haddie Singleton?

"A. Yes.

"Q. In that conversation did he tell you he wanted Haddie to be paid for what she was doing?

"Mr. Scott: We object because it is irrelevant, incompetent and immaterial and because it is leading and calls for a conclusion of the witness.

"A. I heard him talk several times about what Hade did do and he said he intended for Hade to have pay for what she did. I have heard him talk and Mrs. Coley, too."

" 'It is now well-settled in this state that an implied agreement may be inferred and support an action * * * as between near relatives, where the facts and circumstances are such that a mutual intent to pay and to receive pay for such services is a reasonable and just conclusion. Lowery v. Pritchett, 204 Ala. 328, 85 So. 531; Nelson v. Nelson, 210 Ala. 592, 98 So. 885; Croft v. Croft, 219 Ala. 94, 121 So. 82; Butler v. Kent, 152 Ala. 594, 44 So. 863; Kinnebrew's Distributees v. Kinnebrew's Administrators, 35 Ala. 628; Parker's Heirs v. Parker's Adm'r, 33 Ala. 459.' " Blaylock v. Pillsbury, 269 Ala. 602, 114 So.2d 904, 906.

From the record in this case, we are persuaded that a mutual intent to pay on the part of Hugh Coley, and to receive pay on the part of Mrs. Singleton, is a reasonable and just conclusion.

### Statute of Non-Claim.

Appellants argue that Mrs. Singleton's claim could not be allowed because: "There is no competent evidence that the claim in this case was ever filed and docketed as required by law." In support thereof, appellants cite Kornegay v. Mayer, 135 Ala. 141, 33 So. 36, where, with respect to the statute of non-claim, now Title 61, §§ 210, 214, Code 1940, this court stated:

" * * * Other than by the docket entry the statute prescribes no way to evidence the filing; but the entry furnishes evidence in a form which is

permanent, and attended with at least a *prima facie* presumption of correctness. Therefore, the docket entry must be regarded as the best evidence of the act of filing if not of the character, of the claim. It is presumed the probate judge did his duty in respect of docketing claims filed against this estate, and the substitution of oral testimony for the docket entry as evidence of such filings, without accounting for the non-production of the entry, was in violation of the rule which requires the best evidence of which the case is susceptible. * * *." 135 Ala. 141, 146, 147, 33 So. 36, 38.

In the instant case, the transcript on page 51 discloses a statement of claim sworn to by Haddie Singleton and endorsed "Filed: July 18, 1953," followed by an order of the judge of probate setting a day for hearing the claim. Nowhere have we found in the transcript any indication that appellants raised the bar of the statute of non-claim in the trial court. In fact, timely presentation seems to have been conceded by appellants in the court below, because their bill of complaint, sworn to by appellant, Mrs. Hattie McElhaney, on transcript page 2 recites in pertinent part as follows:

"3. That the said Hugh Wesley Coley owed no debts at the time of his death and no administration was necessary, but on the 3rd day of February, 1953, the respondent, Mrs. Haddie Singleton, procured the appointment of herself as the administratrix of the estate and *on the 18th day of July, 1953, the said administratrix filed with the Probate Court a claim against the estate, or a purported claim against the estate, in the sum of $4,000.00* * * *." (Emphasis Supplied.)

In such posture of the record, appellants cannot now on appeal for the first time raise failure of claimant to comply with the statute of non-claim as ground for reversal.

 "It is a very general rule in appellate courts, which this court has observed very closely that questions not made and decided in the primary courts, will not avail on error to reverse a judgment or decree, unless it be a want of jurisdiction apparent on the face of the proceedings.—1 Brick. Dig. § 31, 776. The rule is conservative, and essential to prevent parties from being surprised by objections which, if it was not intended to waive, ought to have been made in the course of the proceedings, and before judgment or decree in the primary court; and which, if there made, would often be obviated. * * *." Barnett v. Riser's Executors, 63 Ala. 347, 348, 349.

See also Walker v. Walker, 245 Ala. 154, 16 So.2d 190.

The decree appealed from is due to be and is affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.