797 So.2d 1086 (2000)
Eustice Myrl SHIVER
v.
BUTLER COUNTY BOARD OF EDUCATION et al.
2991088.
Court of Civil Appeals of Alabama.
December 15, 2000.
Certiorari Denied May 11, 2001.
*1087 James H. Anderson and William F. Patty of Beers, Anderson, Jackson, Nelson, Hughes & Patty, P.C., Montgomery; and Gregory B. Stein of Stein & Brewster, Mobile, for appellant.
Lewis S. Hamilton of Powell & Hamilton, Greenville, for appellee Butler County Board of Education.
David R. Boyd and Beth Moscarelli of Balch & Bingham, L.L.P., Montgomery, for amicus curiae Alabama Association of School Boards, in support of the appellee Butler County Board of Education.
Alabama Supreme Court 1000595.
MONROE, Judge.
On March 12, 1997, Eustice Myrl Shiver filed a declaratory-judgment action against the Butler County Board of Education, the individual members of the Board, and the superintendent of education for Butler County Schools (the Board, its members, and the superintendent are hereinafter collectively referred to as "the Board").[1] Shiver sought a judgment declaring that he had the right to certain state-mandated salary increases for public education employees, and he asked for an order enforcing that right. After conducting a hearing, the trial court rendered a judgment in favor of the Board, denying all relief requested by Shiver. The trial court also noted that portions of Shiver's claims were barred by § 6-2-38(m), Ala.Code 1975. Shiver appeals.
The record indicates the following facts:
*1088 Shiver retired from the United States Army as a lieutenant colonel in 1990. Since 1991, he has been employed by the Board as a full-time instructor for the Junior Reserve Officer Training Corps ("JROTC"). Although the JROTC program is certified as an Army-sanctioned program, Shiver's employer is the Board, and his supervisor is the principal of Greenville High School. The Board retains the right to fire Shiver from his position as a JROTC instructor. Shiver received tenure for his JROTC position in the 1994-95 school year, and he is certified by the Alabama State Department of Education to teach JROTC programs.
The Army sets a minimum salary for JROTC instructors, which is equal to the difference between active-duty pay and allowances for their rank and their current retirement pay. 10 U.S.C. § 2031 (1998); 32 C.F.R. § 111.7 (1999). The Army reimburses the Board for half of this minimum amount paid to Shiver. Id. The minimum amount fluctuates according to federal increases in Shiver's retirement pay and in the applicable active-duty pay. The Board may choose to pay Shiver more than this minimum amount, but the amount reimbursed by the Army will not be more than half the minimum amount. 32 C.F.R. § 111.7. Despite this split funding, Shiver receives only one paycheck for his services as a JROTC instructor; that check comes from the Board. Shiver's retirement pay is paid separately by the Army.
In 1993, 1994, and 1996, the State of Alabama passed mandatory-pay-raise acts that Shiver contends applied to him. See 1993 Ala. Acts, Act No. 93-646; 1994 Ala. Acts, Act No. 94-474; and 1996 Ala. Acts, Act No. 96-758 (codified at §§ 16-22-10 to -12, Ala.Code 1975). With each Act, the Board applied the raise only to the portion of Shiver's salary that is not reimbursed by the Army. On appeal, Shiver argues that the trial court erred in holding that he was not entitled to have the percentage called for in each Act applied to his total salary, rather than only to that portion of his salary that is not reimbursed by the Army. Additionally, Shiver argues that the trial court erred in holding the applicable statute of limitations to be § 6-2-38(m), Ala.Code 1975, rather than § 6-2-33(3).
We do not consider the statute-of-limitations issue, because it was not properly preserved for appeal. Generally, a reviewing court cannot consider arguments made for the first time on appeal. Rule 4(a)(3), Ala. R.App. P.; CSX Transp., Inc. v. Day, 613 So.2d 883, 884 (Ala.1993). Rather, our review is restricted to the evidence and the arguments considered by the trial court. Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992). Even if a particular issue is raised at the trial level, an appellate court may review that issue only on the theory on which it was tried and on which the judgment was rendered. See Boyd v. Sellers, 431 So.2d 1294, 1296 (Ala.Civ.App.1983). Our Supreme Court stated in Head v. Triangle Constr. Co., 274 Ala. 519, 522, 150 So.2d 389, 392 (1963):
"The general rule is that the appellate court will review only questions that are raised by the record. This rule is premised on the doctrine that the trial court should first have the opportunity to rule on all points. The duty of an appellate court is to review the action of the lower court to ascertain whether or not error was committed; it is not to entertain any issue whatsoever that parties wish to raise. All reviewable matters stem solely from the record. Hamilton Motor Co. v. Cooner, [254 Ala. 422, 47 So.2d 270 (1950)]; Southern Cement Co. v. Patterson, 271 Ala. 128, 122 So.2d 386 [(1960) ]; McElhaney v. Singleton, 270 Ala. 162, 117 So.2d 375 [(1960)]; State *1089 v. Moore, 269 Ala. 20, 110 So.2d 635 [(1959)]. And it has been stated by this court that it would review a case only on the same theory that was presented to the trial court. Southern Railway Co. v. McCamy, 270 Ala. 510, 120 So.2d 695 [(1960)]."
Additionally, the last sentence of Rule 4(a)(3), Ala. R.App. P., provides that "[a]ny error or ground of reversal or modification of a judgment or order which was asserted in the trial court may be asserted on appeal without regard to whether such error or ground has been raised by motion in the trial court under Rule 52(b) or Rule 59 of the [Alabama Rules of Civil Procedure]." In explaining this sentence, the Committee Comments on the adoption of Rule 4 state:
"The rule does not ... extend the right to raise for the first time on appeal new matter not presented to the trial court or upon which the trial court had no opportunity to pass.
"The requirement retains the practice that matters raised on appeal must have been presented to the trial court at some stage. Thus matters which can only be raised by post-trial motion must be so asserted. The provision is intended to avoid the necessity of repeated assertions of the same point below. Once ruled on by the trial court in some form, the point is preserved for review on appeal."
After thoroughly reviewing the record, we conclude that Shiver has presented his theory regarding § 6-2-33(3) for the first time on appeal. In its answer to Shiver's declaratory-judgment complaint, the Board alleged that Shiver's claims were barred by the applicable statute of limitations. The parties made no further mention of this issue in the pleadings. However, at the hearing on Shiver's claims, the possible applicability of the two-year statute of limitations in § 6-2-38(m) was mentioned a number of times both by counsel for the Board and by the trial judge. While Shiver's counsel never admitted the applicability of § 6-2-38(m), at no time did he directly deny its applicability or assert a counterargument regarding the 10-year statute of limitations in § 6-2-33(3).[2] The trial court held that § 6-2-38(m) was the applicable statute of limitations and that some of Shiver's claims were, thus, barred. Shiver filed no postjudgment motions.
The first mention of § 6-2-33(3) is found in Shiver's brief on appeal. Therefore, while the statute-of-limitations issue was before the trial court, Shiver made no argument against the Board's position on that issue. Furthermore, Shiver's theory regarding § 6-2-33(3) was not presented to the trial court, so the trial court had no opportunity to consider this theory and to rule upon it. Consequently, we cannot consider the question whether the court should have applied § 6-2-33(3). We must affirm that portion of the trial court's judgment based on its application of the statute of limitations found at § 6-2-38(m). Applying that statute, the court held that Shiver's claims for back pay based on the 1993 and 1994 pay-raise acts are barred. Therefore, we will consider *1090 only his claim for back pay based on the 1996 pay-raise act.
In determining the meaning of a statute, we must look to the plain meaning of the words as written by the Legislature. Our Supreme Court has said:
"`"Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."'

Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.1998) (quoting IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)). It is true that when looking at a statute we might sometimes think that the ramifications of the words are inefficient or unusual. However, it is our job to say what the law is, not to say what it should be. Therefore, only if there is no rational way to interpret the words as stated will we look beyond those words to determine legislative intent. To apply a different policy would turn this Court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers. See Ex parte T.B., 698 So.2d 127, 130 (Ala.1997)."
DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 275-76 (Ala.1998). (Some citations omitted.)
The 1996 pay-raise act, Act No. 96-758, is codified at § 16-22-12, Ala.Code 1975. That Code section states, at § 16-22-12(a)(1):
"(1) CERTIFICATED PERSONNEL (K-12). For the fiscal year beginning October 1, 1996, and each year thereafter, each cell on the state salary matrix contained in the annual budget act for the public schools shall be increased by four percent (4%) in addition to the amounts contained in the 1995-96 annual budget act as required and provided by Acts 95-313 and 95-314 and as contained in Section 16-6B-8 and Section 16-13-231 as amended. If the increases in the state salary matrix required in this subsection do not guarantee at least an increase in pay for each teacher in the amount of four percent (4%), then the teacher shall be guaranteed a pay increase in the amount of four percent (4%) for fiscal year 1996-97 and such pay increase shall be reflected in the appropriate local salary schedule and paid to each certificated employee, excepting superintendents of education. Each certificated employee shall be properly placed on the state salary matrix according to degree earned and years of public education service (either in-state or out-of-state). The employee shall be paid according to degree earned and the length of public education experience. The local board of education shall transmit to the State Department of Education the appropriate notice of the earned advanced degree for each employee in a timely fashion; thereafter, the employee shall be paid for the advanced degree as soon as the degree is certified to the State Department of Education as being earned."
We conclude that this statute is not ambiguous. Therefore, we must interpret it according to its plain language, which states that a four-percent raise is to be applied to each cell on the state salary *1091 matrix[3] for certificated personnel in grades K-12. Shiver has a Class-C certificate from the Alabama State Department of Education, which certifies him to teach JROTC programs. He teaches students in grades 11 and 12. While the record indicates that Shiver is not on the Board's salary schedule, no evidence in the record indicates whether he is included on the state salary matrix. However, even if Shiver is not currently included on the state salary matrix, that oversight should be corrected, because the act mandates that "[e]ach certificated employee shall be properly placed on the state salary matrix according to degree earned and years of public education service."
The trial court upheld the Board's interpretation of the 1996 Act; by that interpretation, the Board applied the 1996 pay raise only to that portion of Shiver's salary that is not reimbursed by the Army. In doing so, the trial court stated that it found "no proof or evidence that the legislature intended for the cost of living increases to be applied to that portion of [Shiver's pay] provided by the military."
We find no basis for the trial court's interpretation of the 1996 Act. While it is true that nothing in the Act specifically states that the pay raise is to be applied to that portion of Shiver's salary that is reimbursed by the military, it is equally true that nothing in the Act says it is not to be applied to that portion of his salary. In fact, the Act does not at all address the arrangement for paying JROTC instructors. Therefore, in the absence of language indicating that the Legislature intended the Act to apply only to a portion of a JROTC instructor's salary, it would be improper for this Court to assume such an intention by the Legislature. See DeKalb County LP Gas Co., supra. Any other approach by this Court would violate the doctrine of separation of powers. Id.
Furthermore, the Legislature, in enacting new legislation, is presumed to know the existing law. Blue Cross & Blue Shield of Ala., Inc. v. Nielsen, 714 So.2d 293, 297 (Ala.1998). Applying that principle to this case, we can presume that the Legislature was aware of the federal law requiring military reimbursement of a portion of Shiver's JROTC salary and can presume that the Legislature would have addressed this arrangement if it had intended for JROTC instructors to be treated differently from other teachers in the public schools.
Finally, in the absence of a clear legislative intent to the contrary, the word "shall" is to be given a mandatory connotation when it appears in a statute. State Personnel Bd. v. Prestwood, 702 So.2d 176, 179 (Ala.Civ.App.1997) (citing Prince v. Hunter, 388 So.2d 546 (Ala.1980)). Therefore, because the Act states that the fourpercent raise "shall" be applied to each cell on the state salary matrix, and because there is no indication of a legislative intent to the contrary, the Board has no discretion to apply the pay raise to only a portion of Shiver's salary.
Consequently, we reverse the judgment of the trial court insofar as it held the four-percent increase in pay mandated by the 1996 Act applied only to that portion of Shiver's salary that is not paid by the Army. We remand for the trial court to enter a judgment consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
*1092 ROBERTSON, P.J., and YATES and CRAWLEY, JJ., concur.
THOMPSON, J., concurs in part and dissents in part.
THOMPSON, Judge, concurring in part and dissenting in part.
I agree with the majority's ruling concerning Shiver's failure to preserve for appeal the statute-of-limitations issue. However, I disagree with that portion of the opinion reversing the trial court's holding on the pay-raise issue. The trial court denied Shiver's petition seeking application of the four-percent pay raise to that portion of his salary that is reimbursed by the United States Army. In doing so, the trial court adopted the position advocated by the Butler County Board of Education that the board had the discretion to deny the application of the four-percent pay raise to that portion of the employee's salary funded by the Army.
It is well-settled law in this state that the interpretation of a statute begins with the language of the statute itself. Ex parte Jones, 456 So.2d 380 (Ala.1984), cert. denied, 470 U.S. 1062, 105 S.Ct. 1779, 84 L.Ed.2d 838 (1985). However, in this case, the statute is silent on whether that portion of a JROTC instructor's salary reimbursed by the Army should be included in the mandated pay raise.
Under the facts of this case, the only rationale that dictates reversal of the trial court's ruling on this issue is the reasoning that in enacting the pay increase the legislature took into account the reimbursement scheme that funded a portion of the compensation for JROTC instructors. By holding that the legislature intended for the pay raise to apply to that portion of Shiver's salary reimbursed by the Army, the majority concludes a contrary legislative intent where, in other circumstances, the discretion of the board is the controlling consideration. King v. Jefferson County Bd. of Educ., 659 So.2d 686 (Ala. Civ.App.1995); Scoggins v. Henry County Bd. of Educ., 549 So.2d 99 (Ala.Civ.App. 1989); Hughes v. Jefferson County Bd. of Educ., 370 So.2d 1034 (Ala.Civ.App.1979). For example, in threshold contract matters not involving tenure, in budgetary matters, and in disciplinary policy the board is held to the abuse-of-discretion standard. See Foster v. Blount County Bd. of Educ., 340 So.2d 751 (Ala.1976); Lawrence v. Birmingham Bd. of Educ., 669 So.2d 910 (Ala. Civ.App.1995); King, supra (where our supreme court and this court held that the board had the discretion to determine whether to renew the contract of a nontenured teacher); Hughes, supra (where this court held that school boards have the authority to classify teachers for purposes of compensation); Scoggins, supra (where this court held that school boards and officials have the discretion, within constitutional bounds, to implement disciplinary procedures). The examples cited above reflect a well-established practice of applying the abuse-of-discretion standard of review to board actions not involving tenure. The majority's failure to apply the abuse-of-discretion standard of review to the payraise issue in this case places the board in the difficult position of having to guess at what the Legislature intended when it passed the pay raise. In reviewing this matter, I would defer to the board's decision on budgetary matters.
Furthermore, the courts have been very liberal in construing the power and authority of county boards of education as far as their actions are concerned. The courts have held that if an action is not prohibited by law, it is permitted, and the courts are reluctant to involve themselves in the internal affairs of a board of education exercising its statutory control over the public schools of the county. Courts should not *1093 seek to control the broad discretion given to such boards by the legislature unless the party challenging board actions clearly shows plain error. See Clark v. Jefferson County Bd. of Educ., 410 So.2d 23 (Ala. 1982); Hargett v. Franklin County Bd. of Educ., 374 So.2d 1352 (Ala.1979); see also §§ 16-8-8 and -9, Ala.Code 1975.
It is well settled that this court should not substitute its judgment for that of the trial court when that court has heard ore tenus evidence, unless the trial court's findings are plainly and palpably wrong. Reeder v. Geneva County Bd. of Educ., 586 So.2d 222 (Ala.Civ.App.1991). Furthermore, I believe that the legislature has given plenary power to the county boards of education to establish, operate, and maintain the public schools within the counties. After carefully reviewing the record in this case, I believe that the trial court correctly affirmed the board's decision. Therefore, I respectfully dissent from that portion of the majority's judgment that reverses the trial court's ruling on the pay-raise issue.
NOTES
[1] All individual defendants were sued in their representative capacities.
[2] At the hearing, the Board's counsel contended that the two-year statute of limitations in § 6-2-38(m) applied to Shiver's claims for the increased pay. The following response by Shiver's counsel contains Shiver's only reference to this issue:

"Your Honor, even if the two years were to apply I think in order to correctly come up with back pay you would in equity go back to the point where the raise had not been given and recalculate up all the difference and then draw the line at the period that the statute would end...."
(Emphasis added.)
[3] Effective October 1, 1998, the "State Salary Matrix" was renamed the "State Minimum Salary Schedule." See § 16-13-231.2, Ala. Code 1975.