Does a county board of education have legal authority to operate a child care center? That is the sole question presented by this appeal.
The Jefferson County Board of Education offers child care services as an adjunct to its regular academic program. These services are rendered in response to requests from community members in twelve "Human Resource Zones" in the county. The child care services are offered under the auspices of the Community Education Department of the Board, and while the scope and nature of the child care programs offered by the Board vary somewhat from zone to zone, in accordance with the needs and desires of the local community, the basic child care services include supervision of recreational activities, including physical activity, feeding of a snack, assistance with homework, and, when requested, special tutorial programs coordinated with regular school work.
Participation in these programs is voluntary and on a fee basis. The community education program of the Board and the child care program, in particular, are "self-sufficient" in that all expenses are met by fees generated from the programs. All programs are conducted within existing school facilities.
Appellant Clara Clark owns two day care centers in Jefferson County and one in Shelby County under the name of Happy House Day Care Center, Inc. The Jefferson County facilities owned and operated by Clark are in Irondale and Hoover. Clark identified several facilities which she contends are in competition with her Irondale facility, including at least one child care program operated by the Jefferson County Board of Education.
Clark filed suit against the Board of Education, and sought an injunction to prohibit the continued operation by the Board of Education of the child care programs. Clark, in her suit, claimed that the Board was not empowered to operate the child care centers. The trial judge, after hearing testimony and considering numerous exhibits, refused to grant Clark any relief.
The trial judge held that the operation of a child care center was an activity within the broad powers granted to county boards of education. Clark appealed. As previously noted, the sole issue is: Does a county board of education have authority to operate a child care center?
We first state, in summary form, Clark's argument that the Board has no authority *Page 24 
to operate a child care program. She says that county boards of education, creatures of statute, can exercise only those powers which are expressly conferred upon them, that the powers granted to county boards by Code 1975, §§ 16-8-8, and 16-8-9, to administer and supervise is limited to public schools, and that a day care program is not a part of a public school
because "public schools" are those established and maintained for persons between the ages of 7 and 21. Basically, Clark argues that if the legislature had intended for county boards of education to have authority to offer educational or other opportunities to preschoolers, it would have authorized such activities, by law, as it did with kindergartens (Code 1975, §16-8-41), elementary, junior and senior high schools, grades 1 through 12 (Code 1975, § 16-8-36), adult education (Code 1975, § 16-34-1, et seq.), rehabilitation of handicapped children and adults (Code 1975, § 16-38-1, et seq.), vocational schools (Code 1975, § 16-37-1, et seq.), and special education (Code 1975, § 16-39-1, et seq.). Clark's position is aptly stated by this quote from her brief: "No statute authorizes the education of children between one day and 5 years old."
The County Board contends that "the curricular and extracurricular offerings of the public school systems within this state, as in all states, are established by local boards of education in the exercise of their broad discretionary authority conferred by statute" and that in Alabama, this grant of authority is manifested throughout Chapter 8 of Title 16 of the Alabama Code.
The Board specifically claims that the following Code sections grant to it the necessary power to operate a day care center:
 "The general administration and supervision of the public schools of the educational interest of each county, with the exception of cities having a city board of education, shall be vested in the county board of education."
Code 1975, § 16-8-8.
 "The county board of education shall exercise through its executive officer, the county superintendent of education[,] and his professional assistants, control and supervision of the public school system of the county. The board shall consult and advise through its executive officer and his professional assistants with school trustees, principals, teachers and interested citizens and shall seek in every way to promote the interest of the schools under its jurisdiction."
Code 1975, § 16-8-9.
 "The county board of education shall determine and establish a written educational policy for the county and shall prescribe rules and regulations for the conduct and management of the schools."
Code 1975, § 16-8-10.
The Board argues that the establishment of a community education program, of which the child care specifically challenged by plaintiff is a part, constitutes a classic example of the exercise of administrative discretion, adopted in furtherance of what this lawfully constituted board of education deems to be in the best interest of the school system and its patrons.
The Board, therefore, says that where there is a broad grant of statutory authority, no specific grant of authority to operate a child care program is required. The Board, in its brief, argues:
 "Apparently, appellant contends that a public school system is without authority to devote its facilities or resources to any use other than those specifically prescribed somewhere in the education code. Clearly, the Legislature did not see fit to enumerate or to limit the multifarious programs and activities, both academic and nonacademic, which are enjoying record levels of public participation and support in this County and throughout the State. For example, review of Chapter 8 of Title 16 reveals no specific statute which authorizes county boards of education to support and maintain varsity athletic programs, band programs, or even lunchroom facilities. However, no one would seriously argue that the maintenance of such activities is not within the discretionary prerogative of county boards of education. The program attacked *Page 25 
in the instant case is no less an exercise of the Board's proper discretionary authority. Like a band or varsity athletic program, it offers an opportunity for an enriching though not strictly academic experience which is made possible only through the availability of school facilities and the continuing support of the local board of education."
Although the Board takes the position that its child care program is properly established and maintained under the Board's general discretionary authority, it cites other statutes which it says inferentially support its position. It says that the provisions of Code 1975, § 16-8-41, which grants county boards authority to establish and maintain kindergartens and playgrounds is an example. It also cites Code 1975, §38-7-2 (8), which defines a day care center, but which specifically excludes:
 "a. Kindergartens or nursery schools or other daytime programs operated by public elementary systems or secondary level school units or institutions of higher learning." [Emphasis added.]
The Board contends that the foregoing statute constitutes express legislative acknowledgement and approval of the existence of "other daytime programs" operated by public schools which are similar to private day care centers. "Clearly," says the Board, "knowledge of the existence of such daytime programs as are being challenged in this case must be imputed to the legislature on the basis of this express exclusion from the coverage of the Child Care Act.
The Board also calls our attention to evidence introduced during the trial which shows that the State Board of Education has actively and officially supported the implementation and development of Community Education in local school systems. Illustrative of this evidence is a position statement adopted by the Alabama State Board of Education on March 23, 1977, which reads as follows:
 "The State Board of Education in its efforts to provide the highest quality education for the citizens of Alabama recognizes the components of community education as a most positive influence on the lifelong learning process and the democratic way of life. The State Board of Education also sees the development of positive attitudes toward education, schools, schooling and community agencies as one of the strongest products of the community education philosophy. This philosophy includes increased use of public facilities, increased contacts between school personnel and the community, and citizen involvement in the decision making process that ultimately affects their lives. The community school therefore, represents the best interests of our public schools in Alabama."
Other exhibits included a publication which showed that the Alabama State Department of Education defines "community education" as follows:
"WHAT IS COMMUNITY EDUCATION?
 "Community education is a concept that stresses an expanded role for public education and provides a dynamic approach to individual and community improvement. Community education encourages the development of a comprehensive and coordinated delivery system for providing educational, recreational, social and cultural services for all people in a community. Although communities vary greatly with some being richer than others, all have tremendous human and physical resources that can be identified and mobilized to obtain workable solutions to problems. Inherent in the community education philosophy is the belief that each community education program should reflect the needs of its particular community. The philosophy advocates a process which produces essential modifications as times and problems change."
The publication includes a page which shows that "day care" is one of the activities under the umbrella of "people of all ages together using a community school and community resources."
The concept of community education is probably best expressed in a publication entitled "Community Education: A Position *Page 26 
Statement," which was adopted by the Alabama State Board of Education in March, 1977, and which is included in the record. In this publication, the history, rationale and purpose of community education is set forth. Included in the foreword is a statement by Dr. Wayne Teague, State Superintendent of Education, in which he says: "It is my belief that Community Education can be of great value to a school system and a community interested in maximizing public involvement, citizen awareness and use of facilities." The publication states that "the State Board of Education, recognizing the importance of and supporting the concepts involved in Community Education, adopted a resolution in March, 1975, urging all local school systems `to actively pursue the community education concept.'"
In a section entitled "History" is the following:
 "In Alabama, as in every other state, the community was an essential part of the early schools. Originally, of course, the American school grew out of the desire of communities to reinforce and add to the teachings of the home and church. As communities grew larger, however, our schools also grew larger and more complex. Gradually, the involvement of the community with the school has decreased.
 ". . . [I]n Flint, Michigan in 1935, a movement was begun which has, as one of its basic concepts and goals, the involvement of the community in the educational process, to the point of making the community the classroom. The movement is known today as the philosophy of Community Education and its most common delivery system is known as the Community School."
In the position statement, under a heading "Rationale" is the following:
 "The 1972 President's Commission on School Finance suggested that Community Schools are a means of developing a closer linkage between school children, parents and other citizens in the education community. Involvement of community residents in programs in which they are highly interested and frequently have a voice in developing, naturally `bridges the gap' between school and community. In addition, it fosters positive feelings toward supporting education.
 "Community Education is a process by which we can enhance cooperation with other community and social agencies and can provide maximum utilization of the tax dollar. The Community Education concept is based on the fundamental premise that the public schools belong to all the people, from pre-schoolers through senior citizens. By means of Community Schools, local resources can be harnessed to provide a forum as a means to work with community problems, while bringing back a sense of community identity whereby adults, students and community members can work, play and learn together."
* * * * * *
 "The neighborhood school facilities are owned by the community. They may be used for a whole range of community activities which support, strengthen and augment the basic program for which the educational system exists. The Community School expands the role of the school from a formal learning center for the young, operating six hours a day, five days a week, thirty-five weeks a year, to a total community opportunity center for the young and old, operating virtually around the clock throughout the calendar year. Summarily, it relates the operation of the school to those particular needs of that community."
The purpose of community education is summed up in the publication as follows:
 "Encourage maximum use of school and other facilities for educational, cultural, recreational and social activity.
 "Demonstrate that Community Education is an effective administrative structure for assessing, planning, developing and delivering community (education) services.
 "Generate sufficient local interest in our public schools to the extent that they *Page 27 
become the focal point for facilitating community involvement.
 "Provide the leadership in bringing agencies and organizations together for joint planning and program operations that provide a choice to the public in the delivery of services.
 "Implement a State Advisory Council for Community Education with the major objective advising the State Superintendent of Education on Community Education."
Based on the foregoing facts, and applying the law to those facts, we conclude that the judgment of the trial court is due to be affirmed.
The legislature has made broad grants of authority to the Alabama State Board of Education, the Alabama State Department of Education and to the individual county boards of education to administer and supervise the public schools. It is apparent that the Alabama State Board of Education, pursuant to authority granted it by law, has encouraged the development of "community education," of which "day care" is a part, and has determined that community education is in the best interest of the public schools in Alabama.
This Court has long recognized that the power to administer and supervise the school systems is vested in the various boards of education. The statement of law is contained inHargett v. Franklin Co. Bd. of Education, 374 So.2d 1352 (Ala. 1979), wherein this Court opined:
 "It is established that the administration of school systems is the responsibility of the county boards of education. Code 1975, §§ 16-8-8 -9. Accordingly, the courts will not seek to control the exercise of the broad discretion given by the legislature to the county boards of education. All legal intendments are indulged in favor of the orders of such boards and the orders are due to be upheld unless the invalidity is clearly shown by those challenging the order. Woods v. Board of Education of Walker County, 259 Ala. 559, 67 So.2d 840 (1953); Mullins v. Board of Education of Etowah County, 249 Ala. 44, 29 So.2d 339 (1947)."
We have carefully considered Clark's argument that a public body, without statutory authority, is encroaching upon an area of private enterprise.
Upon consideration of the facts and the law, we hold that while there is no specific statutory grant of authority to local boards of education to operate day care centers, there is authority for such activity under the broad grants of power which we have evaluated and discussed in this opinion. We, therefore, affirm the judgment of the trial court.
AFFIRMED.
TORBERT, C.J., and FAULKNER, JONES, ALMON, SHORES, EMBRY and ADAMS, JJ., concur.
BEATTY, J., concurs in the result.