MADDOX, Justice
(dissenting).
With regard to the third issue in this case, the construction of the word “teacher” as used in Code 1975, § 16-10-4, I still believe the view I expressed in the original opinion is correct, and, therefore, I respectfully dissent. In my opinion, the law on this point is as follows:
It is well established law in this state that interpretation of a statute begins with the language of the statute itself. Ex parte Jones, 456 So.2d 380 (Ala.1984), cert. denied, 470 U.S. 1062, 105 S.Ct. 1779, 84 L.Ed.2d 838 (1985). Statutes covering related subjects should usually be considered in pari materia. Ex parte Johnson, 474 So.2d 715 (Ala.1985). I cannot apply the in pari materia principle here, however, because of the limiting words “in this chapter” contained in § 16-24-1.
Based on these principles, I would hold that the definition of “principal” found in White v. State, 42 Ala.App. 249, 160 So.2d 496 (1964) is not applicable to this case. White was a criminal case, and the statement made in that case that the principal was a teacher was for the purpose of showing that he was an agent of the county school board, which the indictment alleged owned the building. In that case the principal’s office had been burglarized and the court was dealing with a legal question as to whether the indictment should have listed the principal as the occupant of the office, instead of the county board of education.
The predecessor of Code 1975, § 16-10-4, was Title 52, § 140, Code of Alabama 1940. That section was in Chapter 7 of Title 52, headed “Board of School Trustees,” and Title 52, § 351, referred to in White, was in Chapter 13 of Title 52, entitled “Tenure of Employment of Teachers.” Furthermore, the provisions of § 16-10-4 were part of the 1927 school code, and the provisions of Title 52, § 351, were not adopted until 1939. I am of the opinion that the legislature did not intend for “teacher” in § 16-10-4 to include “principal.”
The brief in this case prepared by counsel for the Alabama Association of School Boards does not attempt to argue that the word “teacher” contained in § 16-10-4 does not include “principal,” but does request and argue for a broad determination of the public policy issue of which agency should control the assignment of teachers, the school board or the school trustees, and argues that if that power of control is vested in the school trustees, then a statement of educationally sound reasons for the trustees’ rejecting a teacher should be required.
The association, in its amicus curiae brief, concludes:
“School trustees can only reject a teacher if they reasonably doubt the teacher’s professional suitability. Any other interpretation of § 16-10-4 violates the rules of statutory construction, is impracticable, and shifts political and administrative power to school trustees at the expense of the officers expressly designated by the Legislature to control county schools. When trustees reject a teacher for reasons founded in anything except sound educational considerations, the superintendent of education has no duty to make a new appointment, and his earlier appointment remains valid.”
I do not believe this public policy issue is presented in this record, because this case deals with the assignment of a principal, not a teacher. In any event, such a public policy issue should be addressed to the legislature, because the provisions of present § 16-10-4, which deals with teachers, requires only that the trustees state their “reason,” and in this case the trustees did give their “reason.”
I would point out that the Cleburne County Board of Education treats this case as one dealing with the power of the Board versus the power of the trustees to the Board’s assignment of a principal. That is the only issue I address in this dissent.
I have examined the sections of the Code which grant powers to the boards of education, and I note that the legislature, in setting out the powers of the boards, made a listing that classified “principals” and “teachers” separately.
*54 In § 16-8-9, Code 1975, the legislature gave boards of education this power:
“The county board of education shall exercise through its executive officer, the county superintendent of education and his professional assistants control and supervision of the public school system of the county. The board shall consult and advise through its executive officer and his professional assistants with school trustees, principals, teachers and interested citizens and shall seek in every way to promote the interest of the schools under its jurisdiction. (School Code 1927, § 98; Code 1940, T. 52, § 74.)” (Emphasis added.)
And in § 16-8-23, Code 1975, a board of education is given the following power:
“The county board of education shall appoint, upon the written recommendation of the county superintendent, all principals, teachers, clerical and professional assistants authorized by the board. The county board may suspend or dismiss for immorality, misconduct in office, insubordination, incompetency or willful neglect of duty, or whenever, in the opinion of the board, the best interests of the school require it, superintendents, principals, teachers or any other employees or appointees of the board, subject to the provisions of chapter 24 of this title. (School Code 1927, § 117; Code 1940, T. 52, § 86.)” (Emphasis added.)
Had the legislature intended for the “refusal” provision of § 16-10-4 to apply to principals, it could have included the word “principal” in that section, as it did in § 16-8-9 and § 16-8-23.
Furthermore, Chapter 8 of Title 16 of the 1975 Code sets out the authority granted by the legislature to a county board of education, and provides that the general administration and control of all educational matters affecting the county are vested in the county board. It further provides that the county board of education shall exercise and control the supervision of the school system of the county.
The courts have been very liberal in construing the power and authority- of county boards of education as far as their actions are concerned. The courts have held that if an action is not prohibited by law, it is permitted, and the courts are hesitant to involve themselves in the internal affairs of a board of education exercising its statutory control over the public schools of the county. In Clark v. Jefferson County Board of Education, 410 So.2d 23, at 27 (Ala.1982), this Court, quoting from Hargett v. Franklin County Board of Education, 374 So.2d 1352 (Ala.1979), stated:
“It is established that the administration of school systems is the responsibility of the county boards of education. Code 1975, §§ 16-8-8 [and] -9. Accordingly, the courts will not seek to control the exercise of the broad discretion given by the legislature to the county boards of education. All legal intendments are indulged in favor of the orders of such boards and the orders are due to be upheld unless the invalidity is clearly shown by those challenging the order. Woods v. Board of Education of Walker County, 259 Ala. 559, 67 So.2d 840 (1953); Mullins v. Board of Education of Etowah County, 249 Ala. 44, 29 So.2d 339 (1947).” (Emphasis added.)
I believe that the legislature has given plenary power to the county boards of education for the establishment, operation, and maintenance of the public schools within the counties and that the trial court erred when it ordered the Cleburne County Board of Education to appoint and assign another principal at the Pleasant Grove Elementary School under the provisions of § 16-10-4. I therefore dissent.
BEATTY and STEAGALL, JJ., concur.