Rel: August 23, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2024

_____

### SC-2024-0048
_____

## John Skidmore

### v.

## Billy Wayne Skidmore, Jr.

### Appeal from Marshall Circuit Court
### (CV-23-900277)

COOK, Justice.

This case involves competing claims of ownership to real property.

As explained below, we hold that the Marshall Probate Court could not exercise jurisdiction to resolve the dispute by avoiding a recorded deed to real property. Because we determine that the probate court lacked jurisdiction to resolve the property dispute, we do not reach the merits of that dispute.

The complicated procedural history is explained below. In sum, the probate court adjudicated competing claims of ownership to real property. The result of its decision was that the property passed through the decedent's estate rather than outside the estate. In reaching its decision on ownership, the probate court avoided a deed, recorded after the decedent's death but executed before his death, purporting to convey the property to the decedent and his son John Skidmore as joint tenants with rights of survivorship. In other words, the probate court rejected John's claim that -- as a result of the decedent's death -- he owned the entire property as the surviving joint tenant under the most recently executed deed. The probate court instead determined that the property was held in a tenancy in common via a previously executed deed and that, thus, the estate, John, and John's ex-wife each had a one-third interest in the property.

John then removed the administration of his father's estate to the Marshall Circuit Court and filed a motion asking the circuit court to alter, amend, or vacate the probate court's judgment concerning ownership of the property. The circuit court entered an order denying his motion, and he now appeals to this Court.

Because we conclude that the probate court did not have jurisdiction to adjudicate conflicting claims of title to real property in these circumstances, we reverse the circuit court's order and remand the action to the circuit court for further proceedings consistent with this opinion.

<u>Facts and Procedural History</u>

Billy Skidmore ("Billy") died intestate in July 2015. He was survived by his two sons: the appellant, John, and the appellee, Billy Wayne Skidmore, Jr. ("Billy Jr.").

I. <u>Administration Proceedings in the Probate Court</u>

On October 19, 2015, the probate court awarded John letters of administration over his father's estate. In December 2015, John's half brother, Billy Jr., filed a claim in the probate court, asserting his entitlement to an equal share of his father's estate.

In November 2017, John filed an initial inventory of the estate's assets. That initial inventory generally listed "Real Property" as an asset of the estate and estimated the value of that real property to be $524,240. Several years later, in January 2021, Billy Jr. moved to compel the filing of a complete inventory and accounting of Billy's estate. The complete inventory subsequently filed by John listed the estate's interests in three parcels of real estate, including the estate's purported one-third interest in a commercial building ("the subject property"). The inventory estimated the value of the estate's interest in the subject property as $113,033.33.

Billy, John, and John's ex-wife, Jenna Skidmore, had purchased the subject property in 1998 and constructed a 5,000-square-foot building designed for a mixed-use development. The 1998 deed devised the subject property to Billy, John, and Jenna as tenants in common. When John and Jenna divorced in 2004, Jenna agreed to be divested of her interest in the subject property as part of the divorce agreement. On August 19, 2004, Billy, John, and Jenna allegedly signed a warranty deed conveying the subject property to John and Billy as joint tenants with rights of survivorship, but, as explained below, that deed was not recorded at the

time. According to John, he had represented that the estate had a one-third interest in the subject property in his inventory to the probate court based on his mistaken belief that Jenna had transferred her one-third interest in the subject property to him -- meaning that he owned a two-thirds interest in the subject property and the estate owned the remaining one-third interest.

In August 2022, Billy Jr. filed a motion to compel a final settlement in the probate court. In his motion, he asked the probate court to order that Billy Jr. be paid his rightful share of his father's estate. Specifically, he argued that his intestate interest in the real property was alone valued at $173,466.67. He further argued that he was entitled to a share of the reasonable rental value of the real property that he alleged John did -- or should have -- collected as administrator of the estate. According to Billy Jr., the value of his share in the rental proceeds amounted to an additional $173,550.

A hearing on Billy Jr.'s motion to compel a final settlement took place in October 2022. At that hearing, John apparently admitted that, although he had been collecting rent on all three parcels of real property listed in the complete inventory, he had never -- in seven years -- opened

5

an estate account. Instead, he had been depositing the rental proceeds into his own personal account -- thereby comingling the estate's moneys with his personal moneys.

In November 2022, the probate court ordered John to file a partial settlement and accounting of the estate, which he submitted on December 14, 2022. In that filing, John asserted that he had recently "obtained an [Employer Identification Number for the estate] and established a [separate business] bank account" to avoid the commingling of estate and nonestate assets. He also enclosed statements detailing -- for all the years of the estate's administration -- the rental income from the estate's properties and the expenses related to the administration of the estate. Those statements reflected a negative cash flow and, according to John, demonstrated that renting the properties had not been profitable.

In March 2023, Billy Jr. moved the probate court to remove John as administrator of the estate and appoint Billy Jr. as the successor administrator charged with selling the estate's real property. In addition, he asked the probate court to strike the partial settlement and accounting filed by John -- arguing that it was not, as required by § 43-2-

6

313, Ala. Code 1975, sworn to under oath. Finally, Billy Jr. asked that, upon the sale of the estate's real property, the probate court award him (1) one-sixth of the net proceeds from the subject property, (2) one-half of the net proceeds from the other two properties owned by the estate, and (3) one-half of the value of the undistributed rents.

On March 31, 2023, the probate court entered an order awarding Billy Jr. successor letters of administration. In its order, the probate court also authorized Billy Jr. to list the estate's real property for sale but cautioned that he would still need to seek the probate court's specific authorization to sell those properties in accordance with §§ 43-2-442 through 43-2-444, Ala. Code 1975. The probate court further ordered (1) that John turn over the "keys to the real property and any and all monies in [his] possession which were paid as rent on the above properties since [Billy's] death" and (2) that Billy Jr. deposit all such moneys into an estate account. The probate court, however, did not reach a decision as to the distribution of the estate's assets.

Shortly thereafter, Billy Jr. retained a realtor to list the subject property for sale and received an offer to purchase the property for approximately $300,000, which he accepted. On July 12, 2023, Billy Jr.

7

petitioned the probate court to approve the sale of the subject property to the prospective buyer. A hearing on Billy Jr.'s petition was set for September 7, 2023. John alleges that he initially had no intention of opposing the sale because, he says, he mistakenly believed (1) that Billy Jr. was entitled to one-half of Billy's one-third interest in the subject property and (2) that he owned the remaining five-sixths of the subject property -- two-thirds as a tenant in common and one-sixth as Billy's intestate heir. However, according to John, in advance of closing, the realtor handling the transaction notified him of a judgment entered against his ex-wife, Jenna, that was recorded as a judgment lien against the subject property, and he subsequently discovered that the 2004 deed divesting Jenna of her interest in the subject property had not been recorded.

John alleges that, in an effort to remove the cloud from the title to the subject property, he began searching his father's records for the 2004 deed and that he discovered the 2004 deed conveying the subject property to him and John as joint tenants <u>with rights of survivorship</u>. According to John, it was only then that he appreciated the significance of the survivorship language in the 2004 deed. Following his discovery, on July

19, 2023, John recorded the deed in the probate court.

While these events were unfolding, the prospective buyer withdrew from the contract to purchase the subject property. Although Billy Jr. was advised of these developments, he did not withdraw his petition to sell the subject property upon the terms of the now terminated contract. Instead, at the September 7, 2023, hearing on Billy Jr.'s petition, counsel for Billy Jr. asked the probate court to adjudicate the validity of the 2004 deed recorded on July 19, 2023.

Counsel for John countered that Billy Jr.'s petition was mooted due to the prospective buyer's termination of the purchase contract, explaining that there was "[n]othing for the [c]ourt [to] rule on because there's no pending contract sale." Counsel for John further argued that, pursuant to the 2004 deed, the subject property became John's property upon Billy's death. According to him, moreover, the issue whether the 2004 deed was valid had to be resolved in the circuit court and was beyond the probate court's limited jurisdiction. The probate court nevertheless decided to proceed with the hearing and take the issue of the deed's validity under advisement.

On September 19, 2023, the probate court signed a judgment

finding that the subject property "is owned as follows: one third (1/3) by John Skidmore, one-third (1/3) by Jenna Skidmore, and one-third (1/3) by Billy Skidmore (the Deceased)" -- effectively invalidating the 2004 deed recorded on July 19, 2023. Although the judgment was signed on September 19, 2023, John alleges that the probate court filed and issued its judgment to the parties via email on September 20, 2023. That same day, John petitioned to remove the administration of the estate from the probate court to the circuit court. On September 25, 2023, the circuit court granted the petition and ordered the administration of the estate removed.

II. Administration Proceedings in the Circuit Court

On October 20, 2023, John filed a "Motion to Alter, Amend or Vacate Order, or, Alternatively, Appeal of the Probate Court's Order." In that motion, John argued that the probate court's September 2023 judgment was issued without the requisite jurisdiction. He further argued that, even if the probate court had sufficient jurisdiction to enter a judgment invalidating the 2004 deed, that judgment was defective because "1) the judgment was issued without necessary parties joined and served as required by Alabama law; 2) the relief granted was not done so with prior

10

sufficient notice sufficient to comport with requirements of due process; and 3) the petition sought relief that was mooted."

Billy Jr. subsequently moved to strike John's October 20, 2023, filing, arguing that John could have filed a motion to alter, amend, or vacate the probate court's judgment only in the probate court but that, because John had removed the administration of the estate to the circuit court, the probate court no longer had jurisdiction to consider his postjudgment motion. In his motion to strike, Billy Jr. stated that "there is no motion to alter, amend or vacate before [the circuit court] because it is not [the circuit court's] ruling John … seeks relief from and he has squandered the opportunity to so do." Billy Jr. further argued that there was no "appeal before [the circuit court], because John … simply removed this case, and removal pursuant to § 12-11-41[, Ala. Code 1975,] is not the same as appeal pursuant to § 12-22-21[, Ala. Code 1975]."

On December 12, 2023, the circuit court entered an order denying John's motion. In its order, the circuit court declined to treat John's filing as an appeal under § 12-22-21, Ala. Code 1975, opting to instead consider his filing as a Rule 59, Ala. R. Civ. P., motion, and stated as follows:

> "However, even considering John's Motion as a Rule 59 Motion, this Court notes that no 'newly discovered' evidence

11

was submitted to this Court. See, e.g. Ex parte Hamm, 507 So. 2d 936, 936-937 (Ala. 1987). This Court was able to review the entire hearing via the 53-page transcript submitted by [Billy Jr.] This Court confirms the decision of the Probate Court, and determines that the 19 year old deed the subject of the hearing was concealed from the Probate Court. The Circuit Court and the Probate Court properly ruled that the ownership of the property shall remain as represented under oath by John Skidmore on at least three occasions (two of which were sworn inventories) as if the 19 year old deed was never filed (and otherwise in accord with the deed recorded at Book 1816, Page 219) (under the probate court's powers under [Ala. Code 1975,] § 12-13-1).

"Now[,] this Court[] declares ownership of [the subject property], to be owned 1/3 by John Skidmore, 1/3 by Jenna Skidmore, and 1/3 by Billy Skidmore (the deceased), and this Court further confirms and adopts the rest of the Probate Court's Order issued 9/19/23. See generally, Alabama Code [1975,] § 43-8-5; see also[] In re Estate of Hudson, 887 So. 2d 923, 926-927 (Ala. Civ. App. 2004)[,] Ala Code [1975,] § 12-13-1. In sum, this Court DENIES John Skidmore's Motion."

(Capitalization in original.) John now appeals to this Court.

## Discussion

On appeal, John argues that the probate court lacked jurisdiction to declare ownership of the subject property. He further contends that, in the event that the probate court did have jurisdiction, the entry of its judgment was procedurally defective and violated John's due-process rights. Billy Jr., on the other hand, insists that there is nothing properly before this Court to decide and that we are precluded from reviewing the

12

merits of John's appeal. According to Billy Jr., there is no order from which John can appeal because, he says, by removing the administration of Billy's estate to the circuit court, John foreclosed the opportunity to file a postjudgment motion challenging the probate court's judgment. As a result, he contends that the circuit court's order denying relief pursuant to Rule 59(e) is not "an order from which an appeal to this Court may be taken," Billy Jr.'s brief at 34, and urges us to dismiss John's appeal as improvidently filed.

## I. Appellate Jurisdiction

We first consider whether this Court has jurisdiction over John's appeal. As discussed above, Billy Jr. contends that there is no decision from which John can appeal because, he says, John improperly filed his motion to alter, amend, or vacate the probate court's judgment in the circuit court. Thus, according to Billy Jr., the circuit court lacked the authority to adjudicate John's motion and, therefore, its December 2023 order denying that motion is a legal nullity from which no appeal can arise.

We are not persuaded by Billy Jr.'s claim that this Court is without jurisdiction to address the merits of John's appeal because John failed to

13

file his postjudgment motion in the probate court before removal to the circuit court. As we have explained,

> "'"the administration and settlement of a decedent's estate, is <u>a single and continuous proceeding</u>, and when removed into equity for one purpose, the court must proceed to a final and complete settlement of all matters involved, <u>including those pending and unfinished at the time of its removal from the probate court</u>; for there can be no splitting up of an administration, any more than of any other cause of action."'"

<u>McElhaney v. Singleton</u>, 270 Ala. 162, 166, 117 So. 2d 375, 379 (1960) (quoting <u>Little v. Gowin</u>, 244 Ala. 156, 160, 12 So. 2d 549, 552 (1943)). (emphasis added). "Thus, when the administration of an estate is removed to the circuit court, the circuit court '<u>pick[s] up the proceedings where the probate court had left off</u>.'" <u>Campbell v. Taylor</u>, 159 So. 3d 4, 11 (Ala. 2014) (quoting <u>Sims v. Estate of West</u>, 90 So. 3d 770, 773 (Ala. Civ. App. 2012)) (emphasis added).

The reasoning set forth in <u>McElhaney</u> and <u>Campbell</u> applies with equal force to the facts and issues presented in this case. Here, the record reflects that the probate court's judgment declaring ownership of the subject property was entered on September 20, 2023.[1] Pursuant to Rule

---

[1]Although Billy Jr. alleges that John's postjudgment motion was, "strictly speaking," untimely because it was not filed within 30 days of when the probate court's judgment was signed on September 19, 2023,

59, Ala. R. Civ. P., and Rule 60, Ala. R. Civ. P., the parties were permitted to file postjudgment motions seeking relief from that judgment. A party making a motion under Rule 59(e) must file the motion within 30 days of the judgment's entry, while a motion seeking relief from a void judgment under Rule 60(b)(4) can be filed at any time. Ex parte Full Circle Distrib., L.L.C., 883 So. 2d 638 (Ala. 2003).

When the administration of the estate was removed to the circuit court on September 25, 2023, the parties still had time to file either a Rule 59(e) or Rule 60(b)(4) motion seeking to set aside the probate court's judgment. Because the probate court's judgment could be reconsidered or modified at the time of removal, and because the circuit court "'pick[ed]

---

Billy Jr.'s brief at p. v, John asserts that the judgment was entered for the purposes of Rule 59 when it was electronically transmitted to the parties on September 20, 2023. John's reply brief at 11. Our rules and caselaw have long recognized a distinction between rendering an order and entering it into the court record. See, generally, Ala. R. Civ. P. 58(d) (after a probate judge "render[s]" an order per Rule 58(a) by (among other things) "executing" it, "the judge or clerk of the probate court shall forthwith enter such order or judgment in the court record"). Here, the only indication in the record of the date on which the probate court's judgment was "entered" is in a statement in the circuit court's order denying John's postjudgment motion that characterizes that motion as seeking relief "from the 9/20/23 Order entered by the Probate Judge after a hearing on 9/7/23 ...." Neither party challenged this specific statement by the circuit court, and we therefore need not speculate regarding the date on which the probate court's judgment was entered.

15

up the proceedings where the probate court had left off,'" Campbell, 159 So. 3d at 11 (quoting Sims, 90 So. 3d at 773), the circuit court could properly consider a timely filed postjudgment motion seeking relief from the probate court's judgment.

John filed his October 20, 2023, motion to alter, amend, or vacate within 30 days of the probate court's entry of its judgment declaring ownership of the subject property on September 20, 2023. As previously discussed, in his motion, John argued (1) that the probate court lacked jurisdiction to declare ownership of the subject property and (2) that the probate court acted in a manner inconsistent with due process of law. John also raised challenges related to the merits of the probate court's decision, arguing that the probate court should have denied Billy Jr.'s petition as moot and that the probate court erred by declaring Jenna's one-third interest in the subject property without first joining, serving, or otherwise notifying Jenna or her judgment creditors.

Importantly, although John's motion was designated as a Rule 59 motion, his motion raised both substantive and jurisdictional challenges to the probate court's judgment. We therefore construe his motion as seeking relief pursuant to both Rule 59(e) and Rule 60(b)(4). See Ex parte

16

*Alfa Mut. Gen. Ins. Co.*, 684 So. 2d 1281, 1282 (Ala. 1996) ("[T]his Court looks to the essence of a motion, rather than its title, to determine how that motion is to be considered under [the Alabama Rules of Civil Procedure]."); *Jackson v. Jackson*, 308 So. 3d 524, 529 (Ala. Civ. App. 2020) ("[T]he basis of the mother's postjudgment motion challenging the child-custody aspect of the February 19, 2019, judgment was that that judgment was void for lack of subject-matter jurisdiction. Such an assertion does not challenge the merits of that judgment; it is a collateral attack on the judgment. Accordingly, we conclude that, even though the mother's postjudgment motion was filed within 30 days of the entry of the judgment, that motion, insofar as it challenged the trial court's jurisdiction to rule on issues of child custody in the February 19, 2019, judgment, was not a Rule 59 motion …."); *Allsopp v. Bolding*, 86 So. 3d 952, 957 (Ala. 2011) ("[I]f the underlying judgment is void because the trial court lacked subject-matter or personal jurisdiction or because the entry of the judgment violated the defendant's due-process rights, then the trial court has no discretion and must grant relief under Rule 60(b)(4).").

A. This Court's Jurisdiction to Review the Merits of the Probate Court's Judgment

17

As explained above, following removal, the circuit court was permitted to rule on any motions filed in accordance with the applicable postjudgment procedures. A party that seeks to appeal a final decree of the probate court to this Court must file a notice of appeal "within 42 days (6 weeks) of the date of the entry of the judgment or order appealed from." Rule 4(a)(1), Ala. R. App. P.; see also § 12-22-21, Ala. Code 1975. However, the timely filing of a postjudgment motion pursuant to Rule 59, Ala. R. Civ. P., tolls the 42-day period for filing an appeal. See Rule 4(a)(1).

To the extent that John's October 20, 2023, postjudgment motion alleged legal errors by the probate court, that motion should be treated as a timely Rule 59(e) motion that tolled the time for filing a notice of appeal from the underlying judgment. Applying the rules of appellate procedure applicable to final decrees of the probate court,[2] John was required to file his appeal from the probate court's judgment within 42 days of December 12, 2023 -- the date that the circuit court denied his

---

[2]In other contexts, we have recognized that "this Court has traditionally treated … orders of the circuit court as though they were orders of the probate court." Player v. J.C., 299 So. 3d 945, 949 (Ala. 2020); Tate v. Kennedy, 578 So. 2d 1079, 1080 n.2 (Ala. 1991).

request for Rule 59(e) relief. See Crowder v. Blevins, [Ms. SC-2023-0445, Mar. 22, 2024] ___ So. 3d ___ (Ala. 2024). Thus, insofar as John challenges the merits of the probate court's judgment, his appeal filed on January 23, 2024, was timely and is properly before this Court.

B. This Court's Jurisdiction to Review the Circuit Court's Denial of Relief Under Rule 60(b)(4)

To the extent that John's October 20, 2023, motion argued that the probate court's judgment was void because the probate court lacked jurisdiction or denied him due process, those portions of his motion are best viewed as seeking relief under Rule 60(b)(4). See Allsopp, 86 So. 3d at 957. Although a Rule 60(b) motion does not toll the time for taking an appeal from the underlying judgment, the denial of a Rule 60(b) motion "is, under Alabama law, itself a final judgment that will independently support an appeal." Food World v. Carey, 980 So. 2d 404, 406 (Ala. Civ. App. 2007); see also Crowder v. Blevins, [Ms. SC-2023-0445, Mar. 22, 2024] ___ So. 3d ___ (Ala. 2024). Pursuant to Rule 4(a)(1), Ala. R. App. P., John had 42 days to appeal the circuit court's denial of his Rule 60(b) motion. Thus, his January 23, 2024, appeal challenging the probate court's judgment as void was timely filed and is also properly before this Court.

19

II. Merits

Having concluded that this Court has appellate jurisdiction, we now turn to the merits of John's appeal. This case presents two primary issues: whether the September 2023 judgment of the probate court is "void" within the meaning of Rule 60(b)(4) and, if not, whether that judgment is nevertheless improper.

We begin by considering the validity of the probate court's judgment. "This Court reviews de novo [a] trial court's decision on a Rule 60(b)(4) motion to set aside a judgment as void, because the question of the validity of a judgment is a question of law." Allsopp, 86 So. 3d at 957. A judgment is void for the purposes of Rule 60(b)(4) if "the court that rendered it lacked jurisdiction of the subject matter or of the parties, or if it acted in a manner inconsistent with due process." Satterfield v. Winston Indus., Inc., 553 So. 2d 61, 64 (Ala. 1989).

On appeal, John argues, among other things, that the probate court was without jurisdiction to enter its September 2023 judgment. Before delving into the merits of John's claim, we provide a brief overview of the law governing the jurisdiction of Alabama's probate courts.

A. The Contours of Statutory Probate Jurisdiction

In describing the scope and nature of a probate court's authority, this Court has affirmed that probate courts have "both original and general jurisdiction over matters relating to the administration of an estate." Daniel v. Moye, 224 So. 3d 115, 128 (Ala. 2016); see also Art. VI, § 144, Ala. Const. 2022; § 12-13-1, Ala. Code 1975. However, although we have acknowledged the breadth of a probate court's jurisdiction over the administration of a decedent's estate, this Court has also repeatedly emphasized that a probate court's jurisdiction is not without limits. See, e.g., Lappan v. Lovette, 577 So. 2d 893, 896 (Ala. 1991) ("The probate court cannot take jurisdiction of a cause or administer remedies except as provided by statute.").

Thus, "[i]n Alabama, it is well settled that a probate court '"'generally does not possess jurisdiction to determine equitable issues.'"'" Williams v. Mari Props., LLC, [Ms. SC-2022-0872, Aug. 18, 2023] ___ So. 3d ___, ___ (Ala. 2023) (quoting Martin v. Martin, 329 So. 3d 1242, 1244 (Ala. 2020), quoting in turn Suggs v. Gray, 265 So. 3d 226, 230 (Ala. 2018), quoting in turn Lappan, 577 So. 2d at 896). We note, moreover, that the Marshall Probate Court is not among the five Alabama probate courts conferred with statutory equitable jurisdiction.

21

See Martin, 329 So. 3d at 1244 (recognizing that only the Jefferson, Mobile, Shelby, Pickens, and Houston Probate Courts "have jurisdiction to hear equitable matters and to fashion equitable remedies").

Further, we have consistently held that probate courts "'have only that jurisdiction which is expressly given by statute.'" Miles v. Helms, 359 So. 3d 266, 271 (Ala. 2022) (quoting Longshore v. City of Homewood, 277 Ala. 444, 446, 171 So. 2d 453, 455 (1965)). Section 12-13-1, Ala. Code 1975, confers probate courts with jurisdiction over 11 enumerated types of cases or controversies. As relevant here, § 12-13-1(b)(5) provides that probate courts "shall have original and general jurisdiction over … [t]he sale and disposition of the real and personal property belonging to and the distribution of intestate's estates."

As previously discussed, however, the foregoing statutory provision does not grant probate courts jurisdiction to decide equitable matters in, or apply equitable remedies to, the cases within its subject-matter jurisdiction. See, e.g., Suggs, 265 So. 3d at 230-31 (Ala. 2018) ("[A]lthough the probate court had original and general jurisdiction over the administration of the husband's and the wife's separate estates …, [it] did not have jurisdiction to fashion an equitable remedy concerning the

assets being held in the law firm's trust account."); Marshall v. Marshall, 86 Ala. 383, 389, 5 So. 475, 477 (1889) (noting that, although statute conferred the probate court with jurisdiction to sell land for partition among heirs, probate court did not have equitable jurisdiction "to compensate for inequalities in the partition; nor to take an account of rents; nor to provide for relieving the lands of incumbrances; nor to adjust and equalize the advancements among the tenants in common, when the lands descended from a common ancestor").

In short, as courts of law, probate courts "cannot take jurisdiction of a cause or administer remedies except as provided by statute." Lappan, 577 So. 2d at 896. Moreover, our caselaw provides, with certain exceptions not relevant to this appeal, that Alabama's probate courts lack jurisdiction over equitable matters. Id.

B. The Parties' Arguments

As previously noted, John challenges the probate court's judgment on jurisdictional grounds. John argues that, by virtue of the survivorship provision in the 2004 deed, title to the subject property passed to him at the time of Billy's death -- and never became part of Billy's estate. He further contends (1) that no specific statutory provision confers the

probate court with the authority to set aside a recorded deed to real property and (2) that the probate court lacks equitable jurisdiction to grant such relief. For these reasons, John says, the probate court was without power to enter its September 2023 judgment declaring ownership of the subject property and, therefore, the circuit court should have set aside that judgment as void.

Billy Jr., however, counters that the probate court's exercise of jurisdiction was authorized by statute. Specifically, he argues that, because § 12-13-1(b)(5) vests probate courts with jurisdiction over the "sale and disposition" of real property belonging to an intestate's estate, that provision necessarily empowered the probate court to void the 2004 deed and determine ownership of the subject property. According to him,

> "[i]t is elemental to authorizing the sale of property that the seller must have title to convey, and it is within the purview of the probate court to determine what is and is not an asset of the estate (or is to be passed through the estate), including any parcel of real property which an administrator seek[s] to sell."

Billy Jr.'s brief at 33-34. Thus, Billy Jr. says, § 12-13-1(b)(5) authorized the probate court to determine whether the estate owned the subject property and, therefore, the probate court was not without jurisdiction to enter its September 2023 judgment.

24

C. <u>Why the Probate Court Lacked Jurisdiction to Enter the September 2023 Judgment</u>

Billy Jr. urges this Court to interpret § 12-13-1(b)(5) as authorizing the probate court's September 2023 judgment adjudicating the dispute over title to the subject property. Importantly, however, his proposed interpretation of that statutory provision is at odds with both (1) the plain language of § 12-13-1(b)(5) and (2) long-standing Alabama precedent.

"The jurisdiction of the probate court is limited to the matters submitted to it by statute." <u>Wallace v. State</u>, 507 So. 2d 466, 468 (Ala. 1987) (plurality opinion). As previously noted, § 12-13-1(b)(5) provides that probate courts "shall have original and general jurisdiction over … [t]he sale and disposition of the real and personal property <u>belonging to</u> and the distribution of intestate's estates." (Emphasis added.) Thus, § 12-13-1(b)(5) empowers probate courts to sell real property that <u>belongs to</u> an intestate's estate. It does <u>not</u> contemplate the sale of real property that lies presumptively outside the intestate's estate or otherwise authorize probate courts to adjudicate claims to real property that are adverse to the intestate's estate.

Importantly, this Court has also repeatedly recognized that the

25

power of "the Probate Court to sell lands for distribution extends only to the title or estate as it descended …." Jones v. Woodstock Iron Co., 95 Ala. 551, 559, 10 So. 635, 637 (1892) (construing Ala. Code 1876, § 2105). In Whorton v. Moragne, 62 Ala. 201 (1878), we explained that

> "[t]he jurisdiction of the court of probate to order a sale of lands on the application of the executor or administrator, is statutory and limited. When the ground of jurisdiction is, a necessity for a division or distribution between heirs or devisees, the lands must remain in the same condition as to title, as they were at the death of the testator or intestate."

Id. at 207 (emphasis added). In other words, probate courts are powerless to order the sale of real property not owned by the decedent at the time of death. See id.

Alabama caselaw also dictates that probate courts lack jurisdiction to adjudicate disputes over title to real property between an estate and persons asserting claims adverse to the estate. Laurance v. Mitchell, 244 Ala. 678, 680, 15 So. 2d 583, 584 (1943) ("[The probate] court was without jurisdiction to try titles between the decedent and [the decedent's mother]."); and Eatman v. Eatman, 83 Ala. 478, 481, 3 So. 850, 852 (1888) ("It does not make a case of adverse titles, which the Probate Court is without jurisdiction to adjudicate …."). In particular, this Court has held that probate courts generally cannot determine equitable issues, or

administer equitable remedies, in exercising the statutory jurisdiction granted by § 12-13-1. See, e.g., Hughes v. Branton, 141 So. 3d 1021, 1027 (Ala. 2013) (concluding that probate court lacked jurisdiction to adjudicate claim seeking to set aside a deed conveying the decedent's interest in real property because "a claim to set aside a deed for lack of mental capacity or undue influence is equitable in nature"); Lappan, 577 So. 2d at 896 (holding that no statutory grant of power authorized probate court's attempt to grant the decedent's wife "equitable relief based on her claims that she had made improvements to the house and to the land in reliance on the decedent's inter vivos promise ….").

As discussed above, our controlling precedents reflect that the probate court lacked jurisdiction to (1) order the sale of real property not owned by Billy at the time of death, (2) adjudicate questions of title to disputed real property, or (3) grant equitable relief. Although we recognize that the determination of title is incidental to a probate court's exercise of jurisdiction pursuant to § 12-13-1(b)(5), that code section does not authorize probate courts to adjudicate disputes over title to real property. When such a dispute arises, a probate court cannot act to resolve the dispute, and the question of title to the property must be

27

determined by a circuit court. See Ballard v. Johns, 84 Ala. 70, 71, 4 So. 24, 25 (1888) (noting that a separate, but similar, statutory provision "denies to the probate court the power and jurisdiction to adjudicate, on a petition for the partition of lands, adverse claims and titles," and concluding that, "[i]f during the pendency or trial of the petition, it is made known to [the probate court] that there is a substantial adverse claim asserted by any one, the statute makes it obligatory upon [the probate court] to decline further jurisdiction of the matter").

Here, the 2004 deed was the most recently recorded instrument related to the subject property. That deed conveyed the subject property to Billy and John as joint tenants with rights of survivorship and was recorded in the probate court several weeks before the September 7, 2023, hearing. At that hearing, moreover, the probate court was explicitly advised of the 2004 deed. Indeed, counsel for Billy Jr. explained that he was there "to make arguments about the validity of that deed." Thus, the probate court was notified of (1) a substantial dispute as to the estate's title to the subject property and (2) evidence that the subject property was not subject to probate administration.

Further, although John claimed that he was the sole owner of the

subject property at the September 7, 2023, hearing, he did so only to explain why the probate court should decline to adjudicate the validity of the 2004 deed. John's claim to sole ownership of the subject property was not the claim of an heir in the administration of an estate. To the contrary, John alleged that -- under the 2004 deed -- no title passed to his father's heirs at all. Instead, he argued, title vested in him as the surviving joint tenant under the 2004 deed. See Fretwell v. Fretwell, 283 Ala. 424, 426, 218 So. 2d 138, 140 (1969) ("[A] surviving joint tenant becomes the absolute owner of the property held in joint tenancy upon the death of the cotenant, free of the claims of the heirs, because the survivor does not acquire title through the deceased but by virtue of the deed.").

Nevertheless, in its September 2023 judgment, the probate court declared that the subject property was owned "one-third (1/3) by John Skidmore, one-third (1/3) by Jenna Skidmore, and one-third (1/3) by Billy Skidmore (the Deceased)." In other words, it determined the title dispute between the estate and John. It did not order the sale or disposition of real property that presumptively belonged to Billy's estate. It also did not determine John's interest in the subject property as Billy's intestate

heir. Instead, the probate court adjudicated the competing claims of ownership to the subject property asserted by John and the estate and determined John's ownership interest in the subject property. Most importantly, it did so by applying an equitable remedy and setting aside the recorded 2004 deed. Randolph v. Randolph, 245 Ala. 689, 693, 18 So. 2d 555, 558 (1944) ("Here we are dealing with the right to cancellation vel non of a deed. It cannot be disputed that this is a subject matter of equitable jurisdiction.").

In making this declaration, the probate court was attempting to use the statutory jurisdiction conferred by § 12-13-1(b)(5) to grant Billy Jr. equitable relief based on his claims regarding the validity of the 2004 deed. However, neither § 12-13-1(b)(5)'s text -- nor our controlling precedents -- authorized this action by the probate court. See Hughes, 141 So. 3d at 1027; Lappan, 577 So. 2d at 896.

Here, once the probate court was made aware of the recorded 2004 deed and John's adverse claim of title to the subject property, it should have declined to exercise jurisdiction over Billy Jr.'s petition to sell the subject property. For this reason, the probate court lacked jurisdiction to enter its September 2023 judgment declaring ownership of the subject

30

property.[3]

<u>Conclusion</u>

Based on the foregoing, we conclude that the circuit court erred in failing to grant John's Rule 60(b)(4) motion to set aside the probate court's September 2023 judgment as void. We therefore reverse the circuit court's order and remand the action to the circuit court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Parker, C.J., and Wise, Sellers, and Stewart, JJ., concur.

---

[3]Because we conclude that the probate court's September 2023 judgment was void for lack of jurisdiction, we pretermit discussion of the other arguments raised by John on appeal.